**Ex parte Alton WRIGHT.**

No. 7851.

Court of Civil Appeals of Texas, Beaumont.

June 17, 1976.
Rehearing Denied July 8, 1976.

R. Leon Pettis, Richard N. Evans, Beaumont, for appellant.

Ernest L. Sample, Donald E. Sample, Beaumont, for appellee.

KEITH, Justice.

Our original jurisdiction has been invoked under the provisions of Art. 1824a, Tex.Rev. Civ.Stat.Ann. (Supp.1975–1976), but first we must identify our cast of characters. Patrick Wright brought suit for divorce against his wife, Patricia. In due time, Patricia sought a temporary restraining order to prevent Patrick and his parents, Alton and Charlene Wright, from disposing of certain property alleged to have been acquired in Korea during the course of the marriage of Patrick and Patricia. She did not, at any time, make Alton and Charlene parties to the suit. The temporary restraining order was granted on November 5, 1975, upon Patricia's sworn statement based upon her information and belief, and the order did not require Patricia to file a bond.

Alton and Charlene were served with a copy of the restraining order and the accompanying show cause order requiring their appearance, but they defaulted. Some two months later, Patricia filed a motion to hold Patrick, Alton, and Charlene in contempt for violation of the temporary restraining order, and again a show cause order was issued.[1] Patrick, but neither Alton nor Charlene, attended at the time and place indicated by the court. Finally, a hearing was held before the judge of the Court of Domestic Relations of Jefferson County, Texas, which resulted in an order holding Alton and Charlene in contempt of court for the violation of the temporary restraining order. They were ordered confined in jail until each purged himself of contempt by delivering the property which

Patricia claimed they had in their possession belonging to her.

Only Alton was confined to jail and upon his application we granted the writ of habeas corpus and admitted him to bail pending a determination of the controversy. We have a full statement of facts with all of the testimony introduced at the hearing of the contempt motion as well as a transcript of the pleadings. We have likewise been furnished with briefs and the parties have argued the cause.

Just as Chief Justice Burger stated in *Maness v. Meyers*, 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574, 583 (1975):

> "We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, to comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."

Notwithstanding the admonition of the Chief Justice, the Court held that the imprisonment of Maness was illegal. We reach the same result for the reasons now to be stated.

The adjudication which we review was of civil contempt, i. e., remedial and coercive in nature. *Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976) (19 Tex.Sup.Ct.Jrl. 286, 287, 1976); *Ex parte Hosken*, 480 S.W.2d 18, 23 (Tex.Civ.App.—Beaumont 1972, original proceedings). But, as stated in *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 829 (1960):

> "Contempt proceedings are generally criminal in their nature whether they grow out of criminal or civil actions. It follows then that the proceedings should conform as nearly as practicable to those in criminal cases."

---

1. One day after the issuance of this show cause order, Patricia filed her bond in the sum of $250, with her counsel as sureties.

*Accord: Ex parte Sandefer*, 461 S.W.2d 193, 194 (Tex.Civ.App.—Eastland, 1970, original proceedings); *Ex parte Hosken*, supra (480 S.W.2d at 23).

■ We are satisfied that the trial court had jurisdiction of the parties and of the subject matter of the suit; and, we decline to consider the ex parte affidavit of Relator Alton Wright attached to his petition for the writ of habeas corpus. The time and the place for his testimony with reference to impossibility of compliance with the court's order [under the rationale of *Ex parte DeWees*, 146 Tex. 564, 210 S.W.2d 145, 147 (1948)[2]] was in the trial court when the matter was being considered.

■ The rule of law governing our decision is that set out by Chief Justice Hickman in *Ex parte LaRocca*, 154 Tex. 618, 282 S.W.2d 700, 702 (1955):

"The sole question for decision is whether there was any evidence offered at the trial upon which the trial judge could base the conclusions above quoted. If not, relators have been denied due process of law and the contempt order was and is void."

As stated in *LaRocca*, supra, we have no authority to evaluate facts and we may consider the facts only for the purpose of determining whether they constituted acts sufficient to confer jurisdiction upon the court to make the particular order. And, as stated in an earlier case cited in *LaRocca*, the fact that a judgment may be erroneous does not render it void.

■ In *Ex parte Henderson*, 512 S.W.2d 37, 40 (Tex.Civ.App.—El Paso, 1974, original proceedings), the court considered the leading cases by our Supreme Court and concluded: "[O]ur review of the evidence is to determine whether or not the trial Court's findings which form the basis of the judgment are so completely without evidentiary support as to render the Court's judgment void." Our review of the evidence is under this standard.

**2.** For further amplification of the *DeWees* doctrine, see: *Ex parte Gonzales*, 414 S.W.2d 656 (Tex.1967); *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967). See also, *Ex parte Padfield*,

In our consideration of the evidence offered upon the hearing, we bear in mind the well-established rule enunciated in *Texas Co. v. Lee*, 138 Tex. 167, 157 S.W.2d 628, 631 (1941):

"Such incompetent [hearsay] evidence can never form the basis of a finding of fact or of the judgment of a court; and this is so whether it be objected to or not. *Henry v. Phillips*, 105 Tex. 459, 151 S.W. 533; *Austin Bros. v. Patten*, Tex.Com. App., 294 S.W. 537; 17 Tex.Jur., p. 512, § 211."

*Accord: Aetna Insurance Company v. Klein*, 160 Tex. 61, 325 S.W.2d 376, 381 (1959); *Way v. Fisher*, 425 S.W.2d 704, 705 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ); *Sampson v. Apco Oil Corporation*, 476 S.W.2d 430, 431 (Tex.Civ.App.—Amarillo 1972, no writ); *Hebert v. Loveless*, 474 S.W.2d 732, 737 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.); *Gulf St. Pipe Line v. Orange Cty. Water Dist.*, 526 S.W.2d 724, 727 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.); *Covault v. Texas Instruments, Inc.*, 531 S.W.2d 441, 444 (Tex.Civ. App.—Tyler 1975, no writ).

We return to the central fact of the contempt commitment: Relator Alton Wright was ordered confined in jail until such time as he complied with the court's order of November 5, 1975, by turning over certain property claimed by Patricia to have been shipped from Korea. Patrick, called by Patricia's counsel upon the contempt hearing, testified that he received the notice of the temporary restraining order on or about November 6, and he was asked:

"Q. All right, now at this time when you got the papers where was the shipment from Korea?

"A. At that time it was already lost to my knowledge.

"Q. It already had been lost on November 5th?

"A. Right . . . ."

154 Tex. 253, 276 S.W.2d 247, 251 (1955), and *Ex parte Ramzy*, 424 S.W.2d 220, 226 (Tex. 1968).

Being interrogated as to what had happened to the property from Korea, Patrick said: "I tried every way I could to get them to give me the stuff [and] they said they didn't have it, didn't know where it was, as far as they knew it had been stolen." The record is unclear as to who was referred to as "they" and "them."

The trial judge, sensing the unsatisfactory nature of the testimony being elicited from Patrick, intervened in the proceedings:

"THE COURT: Wright. Now you mentioned in answer to one of counsel's questions you *think* you know who has this property. Who is that?

"A. Well I *think* my parents have hidden and secreted and all that good stuff. They weren't supposed to.

"THE COURT: Is that why you *think* no theft report has been made?

"A. That is exactly the reason I haven't reported it." (emphasis supplied)

Upon examination by his own counsel, Patrick reiterated the foregoing testimony, adding that he had no idea of where his parents might have stored the property.

Patricia, testifying to certain threats against her by Charlene Wright, her mother-in-law, told of a conversation she had had with Charlene Wright wherein no mention was made of the property having been stolen. But, significantly, she did not testify that she had any conversation with Alton Wright or that he had ever so much as seen the property.

The nearest anyone ever came to placing any of the Korean property in the possession of Alton or Charlene Wright was this testimony from Patrick under examination by his own counsel:

"Q. Patrick, isn't it a fact that after this stuff [Korean property] reached your mother's house actually it was already unpacked and distributed throughout the house or was it still in the crate?

"A. No, my mother told me,[3] I never saw it, they unloaded it and uncrated it to make sure nothing was broken.

"Q. So to put it back into the carport you would have to crate it up again?

"A. Yes, they would have to stack it to put it in the carport."

Only by concluding that Mrs. Wright's extra-judicial statement, as related by Patrick, was binding upon her husband *and* by concluding that "they" referred to and meant Alton and Charlene Wright, does respondent put Alton Wright even close to the property in question. Certainly, no court can permit the confinement for an extended period of time upon such unsatisfactory testimony.

We invoke the rule stated by the late Chief Justice Hickman in *Ex parte Morris*, 147 Tex. 140, 215 S.W.2d 598, 599 (1948): "Had relator been convicted without a hearing it would hardly be claimed that due process had been accorded him. There was a proceeding in this case in the form of a hearing, but no evidence of relator's guilt was offered at that hearing. The proceeding, therefore, was a hearing in form only and not such a hearing as is essential to the validity of the judgment. The court was without jurisdiction to enter the contempt order in the absence of some evidence of guilt."

See also, *Ex parte Bethurum*, 153 Tex. 563, 272 S.W.2d 85, 87 (1954), holding: "A judgment of contempt without support in the evidence is void and may be attacked and set aside even in a collateral proceeding."

■ The fact that Relator did not appear at the hearing on the contempt is not determinative since an accused in such a hearing may not be required to give incriminating evidence against himself. In *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212, 217 (1972), it was held that the privilege against self-incrimination can be asserted "in any proceeding,

---

3. We are not reviewing a contempt hearing involving the confinement of Patrick's mother, Charlene Wright; consequently, we express no opinion upon the effect of this statement as to Charlene Wright.

civil or criminal, administrative or judicial, investigatory or adjudicatory."

Being of the opinion that there is no evidence in the record supporting the finding of contempt, Alton Wright is entitled to be released from confinement.

The writ of habeas corpus is granted and relator, Alton Wright, is discharged from custody and the sureties upon his appearance bond are released from all liability thereunder. It is so ordered.

STEPHENSON, J., not participating.