**Ex parte Thomas Dale PAYNE.**

**Original Habeas Corpus Proceeding.**

**No. 8754.**

Court of Civil Appeals of Texas,
Texarkana.

Jan. 15, 1980.
Rehearing Denied March 26, 1980.

**314**

David J. Potter, Potter & Potter, Texarkana, for appellant.

Errol Friedman, Friedman & Hooper, Texarkana, for appellee.

RAY, Justice.

This is a habeas corpus proceeding. Relator, Thomas Dale Payne, seeks relief from commitment to the Bowie County Jail for contempt growing out of his failure to make child support payments.

On September 28, 1965, a divorce decree was entered dissolving the marriage of Thomas Dale Payne and Janie Payne. The judgment provided that Janie Payne was to have custody of the minor child, Lesa Payne, and ordered relator to ". . . pay the sum of Twenty and No/100 ($20.00) Dollars per week for the support and maintenance of the minor child until such child becomes eighteen years of age."

Janie Payne filed her motion for contempt and other relief on March 12, 1979, seeking to have relator held in contempt for failure to make child support payments, and seeking to increase the child support. The first hearing was held on April 19, 1979.

FACTS

The record reveals that shortly after the September 1965 divorce, relator entered the armed forces. During this period of time support allotments were made monthly in the sum of $86.00, but the allotments were terminated in April of 1969 when relator was separated from military service. Relator returned to Texarkana in August of 1969, and shortly thereafter executed, at the urging of Janie, a document which purported to be a child care and custody agreement. The unenforceable agreement attempted to release and relieve the relator of any continuing obligation to make further child support payments in consideration for which relator released and relinquished all parental rights.

The testimony was conflicting as to when relator first defaulted in child support payments and as to the amount of delinquent support payments at the time of the first hearing. It was undisputed that from May 13, 1978, through April 4, 1979, the relator made payments or gifts to his former wife for the benefit of his daughter. The testimony of both parties revealed that Janie Payne had requested assistance from the relator which he willingly provided. At the conclusion of the hearing on April 19, 1979, the trial court entered a commitment order and also an order granting modification of

the support decree. Relator was found in contempt of court for failure to pay an arrearage in the sum of $5,257.00. The court gave relator credit for the military allotment payments and the other payments made from May 13, 1978, through April 4, 1979. Commitment was fixed by confinement in the county jail until relator purged himself by paying the arrearage and court costs. However, on the same day, a second order was signed and entered by the trial court which provided the following:

". . . it is HEREBY ORDERED, ADJUDGED and DECREED that the previous Order of this Court by (sic) modified such that the Respondent [relator] should, and is hereby released from custody upon payment of $1,000.00 into the Registry of this Court to be applied to the arrearage adjudged by the Court. The balance to be paid on or before 19 April, 1980, with commitment to be withheld pending compliance with this Order and the Order Granting Modification of Decree."

Pursuant to this second order, the relator tendered a check in the sum of $1,000.00 and was released from confinement. By letter dated May 3, 1979, the relator's attorney designated a record to be prepared for the purpose of having the court's contempt order reviewed in the Court of Civil Appeals. At the April 19, 1979 hearing, the relator communicated to the court his intention to "appeal" the contempt and commitment order.

On May 15, 1979, the court, on its own motion, held a hearing to decide if the April 19th order should be withdrawn. A review of the May 15, 1979 hearing reveals that the trial court entered the April 19th order permitting the relator to purge himself of contempt by making the $1,000.00 payment, because the court understood that both parties had agreed to the order; that the court subsequently discovered that Mr. Payne desired to "appeal" the order; and that the court entered the order "based upon erroneous information presented to the court." The trial judge stated:

"I had understood that he was remorseful and that he wished to pay off his just debt, instead of that, he wishes not to pay it off and to frustrate the purpose of this Court, not that I wish to deny anyone the appellate rights, but I don't wish them to deny this Court its enforcement powers in contempt matters, . . .

"The other matter, I believe we will also postpone that (sic) day, the Court feels that you have misrepresented certain matters in obtaining the entry of this order, . . . and further, I am disturbed by the fact that you have not presented your client to the jurisdiction of the Court, however, all I can do is accept your statement made in that regard, but I will wish to take up both of these matters . . . the matter of your client's contempt, which by this order that I'll enter, I find him in contempt; and assess punishment, and then I would like to take up further your conduct insofar as it relates to this Court at that time."

These remarks were directed to relator's counsel.

Pursuant to this hearing, an order was entered on May 17, 1979, wherein the court set aside the last order entered on April 19, 1979, together with all pronouncements from the bench, and ordered a new trial to be held on June 1, 1979.

At the June 1, 1979 hearing, evidence was admitted to show that during the period of time from May 13, 1978, through April 4, 1979, Payne forwarded sums to his former wife or directly paid bills for the support of their child totaling $4,353.57. Relator testified that he presently had a total of between $500.00 and $600.00 in his checking and savings accounts, but that his net taxable income for 1979 would probably be $20,000.00. At the conclusion of the hearing, a new commitment order was signed and entered which found relator in contempt of court for failure to comply with the 1965 decree, and found the arrearage to be $4,257.00. The court's June 1 order raised the child support from $20.00 per week to $200.00 per month and also provided the following:

"IT IS THEREFORE, by the Court, OR-DERED AND DECREED that Thomas Dale Payne, Respondent, be and is held in contempt of this Court. Commitment shall be fixed at a fine of $25.00 and confinement in the County Jail for 10 days and thereafter until Respondent has partially purged himself of contempt by payment of $1,000.00 of the arrearage of $4,257.00 plus court costs and the $25.00 fine."

At no time between April 19, 1979, and June 1, 1979, was the $1,000.00 payment, made on April 19th, refunded. It is clear from reviewing the April and June orders that the trial judge simply applied this $1,000.00 to lower the arrearage from $5,257.00 to $4,257.00.

## ISSUES

Relator suggests that the trial court's orders are void for the following reasons:

1. The June 1, 1979, contempt order is void because it places relator in double jeopardy since he had previously purged himself of contempt by complying with the order entered on April 19, 1979.

2. The court's order of June 1, 1979, was void for lack of due process.

3. The child support provision of the 1965 divorce decree was ambiguous, vague and uncertain.

4. The contempt orders were void because the doctrines of laches and estoppel were applicable.

5. The four year statute of limitations, Article 5529, Tex.Rev.Civ.Stat.Ann., applies and thus the trial court was without jurisdiction to adjudicate relator in contempt for payments barred by limitations.

6. The June 1, 1979, order was void because it was impossible for relator to perform.

7. The court's orders were void because imprisonment for failure to make child support payments is in violation of Article I, § 18 of the Texas Constitution prohibiting imprisonment for debts.

## DOUBLE JEOPARDY—FIFTH AMENDMENT

On April 19, 1979, the trial court found relator in contempt but stated that he could purge himself by the payment of $1,000.00 to be applied to the support arrearage and that the balance of the arrearage could be paid on or before April 19, 1980. Relator purged himself by paying the $1,000.00. The record does not reflect nor does the trial court find that relator committed any new act of contempt between April 19, 1979, and June 1, 1979. The trial court, however, on June 1, again found relator in contempt and increased his punishment by assessing a fine of $25.00, confinement in the county jail for ten days and an additional payment of $1,000.00 of the arrearage. We have reviewed the trial court's orders and find that the order entered on June 1, 1979, is void because it violates the double jeopardy clause of the fifth amendment to the United States Constitution. The trial court has no authority to hold a person in contempt a second time for the same offense when the relator has purged himself of the original contempt and no new acts of contempt have occurred in the intervening time. *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); 168 A.L.R. 706 (1947); *Ex Parte Brown*, 574 S.W.2d 618 (Tex.Civ.App. Waco 1978, no writ).

## DUE PROCESS—FOURTEENTH AMENDMENT

Contempt proceedings are generally criminal in nature whether they grow out of criminal or civil actions. It follows that the proceedings should conform as nearly as practicable to those in criminal cases. *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 829 (1960); *Ex Parte Brown*, supra; *Ex Parte Wright*, 538 S.W.2d 483 (Tex.Civ.App. Beaumont 1976, no writ). The constitutional guaranty against multiple punishments provided by the double jeopardy clause of the fifth amendment to the U.S. Constitution, applicable to the states through the fourteenth amendment, prohibits the modification of

the contempt order where such modification increases the punishment if the relator has already purged himself of the contempt, or has commenced service of his imprisonment, or has paid his fine. *United States v. Benz,* supra; *Ex Parte Brown,* supra.

■■ While the equal protection clause of the fourteenth amendment does not impose an absolute bar to a more severe sentence upon reconviction, the due process clause of the fourteenth amendment requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial, and that he be freed of the apprehension of such a retaliatory motivation on the part of the sentencing judge. While we do not believe the trial judge in this case to be vindictive, the court did not follow the guidelines set forth in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). To insure that the guidelines set forth in *Pearce,* supra, are met, it must affirmatively appear from the record that good reason existed for the imposition of a more severe sentence and the factual data supporting such increase must also be a part of the record. The trial court must be careful to see that the reasons set forth in the record for increasing the sentence meet the guidelines of *Pearce,* supra.

In the instant case, had relator not already paid the $1,000.00 pursuant to the trial court's order, the court could have set aside its first judgment of contempt and entered a new judgment of contempt increasing the sentence so long as the new judgment complied with the guidelines set out in *Pearce,* supra. However, since relator had already purged himself of contempt, the trial court was without authority to impose a new judgment of contempt absent any new acts of contempt. *United States v. Benz,* supra; *Ex Parte Brown,* supra.

## VAGUE SUPPORT PROVISIONS

■ We have examined the 1965 divorce decree and find that it is not so ambiguous, vague and uncertain as to be void. It is clear that the trial court in 1965 provided that relator would be required to pay $20.00 per week for the support of the minor child until the child became eighteen years of age. While the judgment does not provide a date for the first payment and to whom the child support payments should be made, the record does reflect that relator had made payments to his former wife through his military allotments for the benefit of the child. Relator is in no position to complain at this late date, because even if the judgment were ambiguous, an application of the rules of construction would be to harmonize the judgment with the facts so that a common sense construction would be put upon the language as a whole. ". . . When the language is susceptible of two interpretations, from one of which it follows that the law has been correctly applied to the facts and from the other, that there has been an incorrect application, that construction will be adopted which upholds the judgment. *Gough v. Jones,* Tex.Comp.App., 212 S.W. 943; 25 Tex.Jur. 460, § 87." *Garza v. Fleming,* 323 S.W.2d 152, 156–157 (Tex.Civ.App. San Antonio 1959, writ ref'd n.r.e.).

## ESTOPPEL

■ Relator insists that the trial court's order is void because Janie Payne is estopped by contract to assert a claim for the child support arrearage. The contract entered into between relator and Janie was void because it is against the public policy of this state to allow parties to a divorce decree to reduce the amount of child support without court approval. *In Re McLemore,* 515 S.W.2d 356 (Tex.Civ.App. Dallas 1974, no writ).

■ Estoppel by contract or agreement means that a party is bound by the terms of his own contract until it is set aside or annulled for fraud, accident or mistake. Since the contract was void, neither party was bound thereby, and thus estoppel by contract could not arise in this case.

## LACHES

Relator insists that the doctrine of laches applies. We disagree. The defense of laches or stale demand is usually only available in suits strictly in equity or in actions at law that involve claims of an essentially equitable character. Thus, the doctrine of laches is not available in a suit for the enforcement of a statutory legal right. A plea of limitation is the defense to be imposed. 35 Tex.Jur.2d *Laches and Stale Demands* § 3, p. 460 (1962). Here, Janie Payne was seeking to enforce a statutory legal right provided for in Section 14.-09 of the Texas Family Code Annotated and thus laches is not the proper defense.

## LIMITATIONS

Relator contends that the trial court's contempt order is void because the four year statute of limitations, Tex.Rev.Civ. Stat.Ann. art. 5529, is applicable and deprives the trial court of jurisdiction to adjudicate relator in contempt since the payments upon which the contempt is based are barred by limitations. If it can be shown that all of the child support arrearage is more than four years past due and no previous attempt has been made to collect such sums by reducing the arrearage to judgment, then the four year statute of limitations, Article 5529, is available as a bar to the collection of such sums and may be a bar to the contempt proceeding itself. Any contempt order entered to enforce support payments barred by limitations is void.

It must be kept in mind, however, that if the trial court determines the arrearage and reduces such to a judgment and in the same proceeding holds the relator in contempt for failure to pay such arrearage even though relator had urged the statute of limitations, relator cannot successfully urge his application for writ of habeas corpus unless he has also appealed that portion of the trial court's judgment which has erroneously failed to apply the statute of limitations. Failure to appeal from that portion of the trial court's judgment in which the trial court erroneously failed to apply the statute of limitations,

will allow that portion of the judgment to become final. Once the judgment has become final, it is not subject to collateral attack by writ of habeas corpus. *Ex Parte Sutherland*, 515 S.W.2d 137 (Tex.Civ.App. Texarkana 1974, writ dism'd); *Ex Parte Sutherland*, 526 S.W.2d 536 (Tex.1975); *Ex. Parte LaRocca*, 154 Tex. 618, 282 S.W.2d 700 (1955).

In the instant case, the relief sought by Janie Payne was to increase child support and to have relator held in contempt for failure to pay the child support arrearage. No motion was made to reduce the arrearages to judgment pursuant to Tex. Family Code Ann. § 14.09(c).

In concluding that the four year statute of limitations, Article 5529, applies to contempt proceedings and to reducing unpaid child support arrearage to judgment, we are not unmindful of the decisions in *Houtchens v. Matthews*, 557 S.W.2d 581 (Tex.Civ.App. Fort Worth 1977, writ dism'd), and *Mitchell v. Mitchell*, 575 S.W.2d 311 (Tex.Civ.App. Dallas 1978, no writ). In both of those cases the courts held that upon motion to reduce unpaid child support arrearage to judgment pursuant to Tex. Family Code Ann. § 14.09(c), the applicable statute of limitations was the ten year statute as set forth in Article 5532, Tex.Rev. Civ.Stat.Ann. In both cases it is unclear why the courts applied Article 5532. The following is the context of Article 5532:

> "A judgment in any court of record, where execution has not issued within twelve months after the rendition of the judgment, may be revived by scire facias or an action of debt brought thereon within ten years after date of such judgment, and not after."

The courts in *Houtchens* and *Mitchell* must have concluded that when each child support payment became delinquent, it also became a final judgment for that amount pursuant to Tex. Family Code Ann. § 14.-08(c) which provides that a valid child support order cannot be modified retroactively with regard to delinquent child support payments. We think the more logical rea-

soning is that Tex. Family Code Ann. § 14.09 provides two *remedies* for the collection of child support arrearages. Subsection (a) provides that the delinquent child support may be collected or enforced through contempt proceedings while Subsection (c) provides that the arrearage may be reduced to judgment and enforced as any judgment for debt. A motion for contempt and a motion to reduce unpaid child support to judgment are separate remedies, not separate causes of action. *Whitley v. Whitley*, 566 S.W.2d 660 (Tex.Civ.App. Beaumont 1978, no writ). Since the *cause of action* is to collect delinquent child support, we see no reason why Article 5529 should not be applicable. It is suggested in an excellent note, entitled *Delinquent Child Support: Remedies, Limitations and Laches*, 28 Baylor L. Rev. 197 (1976), written by James Richmond-Hawkins, that the four year statute of limitations, Article 5529, is applicable to the remedy of contempt. We agree. It is also our opinion that Article 5529 applies to the remedy of reducing child support arrearage to judgment because it and contempt constitute two available remedies under one cause of action.

■ Our Supreme Court has already determined that child support arrearage is not a "debt", and is not barred by the four year statute of limitations relative to debt, Article 5527, Tex.Rev.Civ.Stat.Ann. It probably made that determination in recognition of the constitutional prohibition against imprisonment for debt. *Smith & Bramhall*, 563 S.W.2d 238 (Tex.1978). It is our opinion, however, that the cause of action for the collection of child support arrearage falls within the purview of Article 5529, our "catch all" four year statute of limitations rather than Article 5532 mentioned in *Houtchens* and *Mitchell*, supra. We do not believe that Article 5532 is applicable until the arrearage has been reduced to judgment. At that time, the judgment can be enforced pursuant to Tex. Family Code Ann. § 14.09(c) and Article 5532.

■ While the contempt remedy is in the nature of a criminal proceeding, we do not believe that the statutes of limitations

in the Texas Code of Criminal Procedure apply. See Articles 12.01(4) and 12.02, Texas Code of Criminal Procedure (1977). Prosecution for felony non-support is barred by the three year statute of limitations and prosecution for misdemeanor non-support is barred by the two year statute of limitations.

It is doubtful that Article 5535, Tex.Rev. Civ.Stat.Ann., would toll the running of the statute of limitations as long as Lesa Payne remains a minor, because she is not the "supporting party" to whom the trial court has made the child support payable in the divorce decree. However, it must be kept in mind that the child is the beneficiary of the court's order for child support.

Since there seems to be some confusion concerning which statute of limitations is to be applied to the collection of child support arrearages and contempt proceedings related thereto, it is suggested that the legislature give this matter its attention.

## IMPOSSIBILITY OF PERFORMANCE

■ Relator contends that the June 1, 1979, order was void because it was impossible for him to perform. The record does not conclusively establish that relator had no source from which he might be expected to obtain the arrearage and we have concluded that the court's order was not void in this respect as contended by relator. *Ex Parte DeWees*, 146 Tex. 564, 210 S.W.2d 145 (1948); *Ex Parte Wagner*, 368 S.W.2d 185 (Tex.1963); *Ex Parte Rohleder*, 424 S.W.2d 891 (Tex.1967); *Ex Parte Ramzy*, 424 S.W.2d 220 (Tex.1968); *Ex Parte Hennig*, 559 S.W.2d 401 (Tex.Civ.App. Dallas 1977, no writ). In *Rohleder* the court stated the requirements necessary to establish that relator does not have the financial resources with which to comply with the court's order of support. In the instant case, relator believed that he would have a net taxable income for 1979 in the approximate sum of $20,000.00. He had not made application for credit at any lending institution in the six months prior to the contempt hearing. We find no merit in relator's contention that he is unable to purge himself of con-

tempt because it was impossible for him to perform the order.

## IMPRISONMENT FOR DEBT

■ Relator's argument that his imprisonment for failure to make child support payments would be an unconstitutional imprisonment for a debt in violation of Article I, § 18 of the Texas Constitution is also without merit. *Ex Parte Davis*, 101 Tex. 607, 111 S.W. 394 (1908); *Ex Parte Helms*, 152 Tex. 480, 259 S.W.2d 184 (1953); *Ex Parte Sutherland*, supra; *Smith v. Bramhall*, supra.

## ATTORNEY'S FEES

Relator has requested this Court to declare the attorney's fees awarded to Janie's attorney to be unenforceable.

Attorney's fees are available under Rule 308–A, Tex.R.Civ.P., when the complaining party seeks to have the defaulting spouse held in contempt. Attorney's fees are also available under Tex. Family Code Ann. § 11.18 in any proceeding affecting the parent-child relationship. In both instances, the attorney's fees may be taxed as costs by the trial court and enforced by contempt in both instances or otherwise enforced by any other method for the collection of judgments.

In *Ex Parte Myrick*, 474 S.W.2d 767 (Tex. Civ.App. Houston—1st Dist. 1971, no writ), the court stated that when a portion of the award of an attorney's fee is attributable to work performed in relation to the contempt proceeding under Rule 308–A and a part of the fee is attributable to other work performed in connection with child support, no attorney's fee will be allowed for services rendered pursuant to Rule 308–A when it is determined that the conduct with which relator was charged would not support a finding of contempt. The court stated the following in that habeas corpus proceeding:

> "Some portion of the attorney's fee was awarded for the services rendered in enforcing the decree providing periodic payments for support and to that extent was authorized by Rule 308–A. This court lacks authority in this proceeding to review the evidence to determine what portion of the fee could be allocated to that service, and to reform the judgment so that it could be enforced. Since relator would be deprived of his liberty without due process of law if he is held in custody by reason of his refusal to pay the attorney's fee, that portion of the order must be held unenforceable."

■ In the instant case, we cannot determine what portion of the fee awarded by the trial court was attributable to services performed pursuant to Rule 308–A and what amount was attributable to services rendered pursuant to Tex. Family Code Ann. § 11.18. Following *Myrick*, we hold that all of the attorney's fee award related to the Rule 308–A proceeding is unenforceable.

Relator could have appealed the award of attorney's fees that was attributable to § 11.18 if he had so desired. Tex. Family Code Ann. § 11.19. See *Craft v. Craft*, 579 S.W.2d 506 (Tex.Civ.App. Dallas), writ ref'd per curiam, 580 S.W.2d 814 (Tex.1979).

The relator is ordered discharged and he and his sureties are discharged from obligation under his bail bond.

## ON MOTION FOR REHEARING

■ In determining an application for writ of habeas corpus, it must be kept in mind that the duty of the Court of Civil Appeals is limited to determining whether the trial court's contempt order was void. If the contempt order was void, the relator shall be discharged. If the order of the trial court was only erroneous, then the relator shall be remanded to the custody of the sheriff or other law enforcement official and be jailed pursuant to the orders of the court imposing the commitment. The Court of Civil Appeals has no authority in a habeas corpus proceeding to reform a trial court's judgment. That may be done by the applicable remedy of appeal or writ of error to the Court of Civil Appeals.

The matter of attorney's fees in this case cannot be reformed. The court awarded respondent's attorney the sum of $2,750.00

as attorney's fees. A portion of that was probably attributable to the work done in behalf of respondent in pursuing the contempt matter under Rule 308-A, Tex.R. Civ.P. The other portion of the fee was probably attributable to work done in behalf of respondent in getting the amount of child support changed. Pursuant to Tex. Family Code Ann. § 11.18, the trial court could award attorney's fees for respondent's attorney. It is impossible for us to determine from the record which part of the fee, if any, was related to the Rule 308-A proceeding and which part, if any, was related to the application to change the amount of child support. Whatever portion was attributable to the Rule 308-A proceeding is unenforceable because relator was found by this Court not to be in contempt. *Ex Parte Myrick*, supra. Whatever portion of the fee that was attributable to Section 11.18, would now be final because no appeal was taken from that award. If the trial court lumped all of the fee together and did not initially make a determination as to how much of the fee was related to the Rule 308-A proceeding and how much was attributable to the child support proceeding, then the trial court's order would be vague and uncertain, thus requiring a new determination. However, we point out that such issue is not before this Court for the resolution, except to say that if any portion of the attorney's fee was awarded pursuant to the Rule 308-A proceeding, such portion of the fee is unenforceable as stated in *Ex Parte Myrick*, supra.

Whether the $4,353.57 paid by relator during the period from May 13, 1978, through April 4, 1979, was to be applied to the oldest amount due for child support or the most recent amount due, is a fact question to be determined by the trial court because it involves the intent of the relator since he *voluntarily* made the payments. Had the payments been made pursuant to a coercive order of the court, then, if not specifically stated in the order, such payments would be presumed to have been applied to the oldest amounts due, not barred by limitations, if that defense had been urged by the relator. Certainly, one who has been required to make child support payments, some of which may have become barred by limitations, may yet voluntarily pay the support payments to which the limitation statute would be applicable.

Relator's motion for rehearing is overruled.