**Rose Ann (Davila) KAWAZOE**

v.

**Raymond DAVILA**

**No. 04–92–00529–CV.**

Court of Appeals of Texas,
San Antonio.

March 17, 1993.

David L. Willis, The Law Offices of Steven Gross, San Antonio, for appellant.

Lee Hernandez, Law Offices of Lee Hernandez, P.C., San Antonio, for appellee.

Before REEVES, C.J., and BUTTS and RICKHOFF, JJ.

## OPINION

BUTTS, Justice.

Rose Ann (Davila) Kawazoe appeals from an order denying her motion for enforcement of a child support order by contempt. She raises five points of error contending that the court erred in refusing to make a finding of contempt and refusing to reduce accrued past-due child support to judgment. We affirm.

Rose Ann and Raymond Davila were divorced in January of 1977 or 1978.[1] The court decreed at that time that Raymond pay $25 each week for the support of his infant daughter, Jessica. Raymond made the weekly payments until sometime in 1979. Raymond testified that Rose Ann brought a document to him at that time and asked that he sign it and have it notarized in order to relinquish his parental rights to Jessica. The document states, in pertinent part,

> RAYMOND DAVILA, the natural father of JESSICA ANN DAVILA, a minor (adoption of whom is sought by PETITION filed herein by ANTHONY ADAMS on the ___ day of _____, 19__ to the court) ... hereby agrees to permanently surrender the care of, custody and parental authority of and over such child, and consents to its adoption upon judgment of said court or any court of competent jurisdiction.

Raymond testified that Rose Ann told him that she and her new husband, Anthony Adams, were moving to Germany and that Raymond would not see the child anyway. She represented that Adams would be making his career in the military and that they would not be returning to San Antonio. She stated that Adams wanted to adopt the child and urged that it would be best for the child if she were allowed to make a new start as a member of Adams's family.

Raymond took the document to an attorney, who explained that if he signed it he would no longer be Jessica's father. Ray-

[1.] The divorce decree is dated January 1977, but it appears from the record that the petition for divorce was not filed until September 1977. Also, the decree states that the matter was heard in December 1977. Rose Ann asked the court to correct the date on the decree nunc pro tunc, but the court refused, citing a lack of evidence on the exact correct date.

mond signed the document on June 13, 1979 and personally returned it to Rose Ann, who told him he was no longer the child's father. Raymond then stopped making child support payments. He made no further payments from that time until the time of the contempt hearing. He did not make any further inquiry into whether Rose Ann or Adams pursued any court action to terminate his rights or to complete Adams's adoption of Jessica. In fact, no such action was taken. Even so, Rose Ann began to call Jessica by the last name Adams, and the child used that name until the time of the contempt hearing—a period of approximately thirteen years.[2]

Raymond further testified that after he signed the termination document, Rose Ann would not allow him any further visitation with Jessica. When Jessica was allowed to visit Raymond's family, Rose Ann insisted that Raymond not be present. Raymond's father and Raymond's second wife both testified that they, and Raymond, understood that his parental rights had been terminated.

In 1982 Rose Ann and Adams experienced some financial problems. Raymond testified that he offered some money to assist Jessica, but Rose Ann refused his help and again told him he was not the child's father. Even after Rose Ann's divorce from Adams in 1983, Rose Ann never told Raymond that his parental rights had not been terminated. Raymond testified that if he had known that his rights were not terminated he would have exercised his visitation rights, maintained a parent-child relationship with Jessica, and paid child support.

Rose Ann acknowledged that she discussed with Raymond the relinquishment of his parental rights at the time of her marriage to Adams, but denied any involvement with the termination document quoted above. She stated that no court proceedings were ever initiated to terminate Raymond's parental rights or to effect an adoption by Adams. She also stated that she never denied Raymond access to the

child and that she never told Raymond that Adams had adopted the child.

The court denied Rose Ann's motion for contempt, request to reduce arrearages to judgment, and motion for name change. It ordered Raymond to pay child support from the date of the hearing forward and granted him visitation rights. The court subsequently filed findings of fact in which it stated, among other things, that Raymond and Rose Ann entered an agreement to terminate Raymond's parental rights in lieu of payment of child support; Rose Ann fraudulently led Raymond and his family to believe that those rights were terminated; Raymond did not knowingly violate the court's order of child support; Rose Ann waited thirteen years before revealing to Raymond that his parental rights were not terminated; and Rose Ann did not allow Raymond to have any visitation or contact with the child for thirteen years. The court stated in its conclusions of law that Raymond had not contemptuously disobeyed the order of the court; Rose Ann was barred by laches, fraud, and estoppel from pursuing a judgment for arrears; and Raymond would be entitled to a contractual offset for the amount of arrears claimed.

■ In points of error one and two, Rose Ann contends that the court erred in refusing to make a finding of contempt and in granting Raymond "equitable relief" from contempt on the basis of the written agreement to relinquish his parental rights. "A trial court's holding or refusal to hold in contempt a respondent in a contempt proceeding is not appealable." *Gawlik v. Gawlik*, 707 S.W.2d 256, 257 (Tex.App.— Corpus Christi 1986, no writ); *see also Norman v. Norman*, 692 S.W.2d 655, 655 (Tex. 1985); *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex.1967). We have no jurisdiction to consider points of error one and two.

■ In points of error three and four, Rose Ann contends that the court erred in modifying or extinguishing accrued past-due child support and in refusing to reduce

2. In the same proceeding as the contempt hearing, Rose Ann requested that the court legally change Jessica's name to Adams because that was the name by which she was known, having

used it for thirteen years. Raymond opposed the name change and the court found that it would not be in the child's best interest.

those sums to judgment. *See* TEX.FAM. CODE ANN. § 14.41(a) (Vernon Supp.1993), § 14.41(d) (Vernon 1986). She relies on *Castillo v. Castillo*, 714 S.W.2d 440 (Tex. App.—San Antonio 1986, no writ), to support her assertion that the court had no alternative but to render judgment on the past-due payments. *Castillo*, however, is distinguishable from the present case because there was no assertion of estoppel in that case. The trial court simply reduced the amount of arrearages because the movant had waited ten years to bring the action. *See id.* at 441.

In the present case, the court did not modify or extinguish the arrearage; it held that Rose Ann was barred by laches, fraud, and estoppel from collecting those sums. "The effect of an estoppel is to *prevent the assertion* of what would otherwise be an unequivocal right." *LaRue v. LaRue*, 832 S.W.2d 387, 391 (Tex.App.—Tyler 1992, no writ) (emphasis added). Thus, the court ruled that Rose Ann was prevented from asserting her right to reduce the arrearages to judgment. Points of error three and four are overruled.

In point of error five, Rose Ann contends that the defenses of laches, fraud, and estoppel are not available in an action to enforce child support. Because we hold that estoppel is available as a defense and was properly proved in this case, we need not determine whether fraud and laches, insofar as they differ from estoppel, are also available defenses.

■ "The fact that the defense of estoppel is rarely asserted with success in child support cases does not foreclose its availability as a legitimate, effective defense in appropriate circumstances." *LaRue v. La-Rue*, 832 S.W.2d at 391; *see also Gawlik v. Gawlik*, 707 S.W.2d at 259 (estoppel asserted as defense); *Ex parte Payne*, 598 S.W.2d 312, 317 (Tex.Civ.App.—Texarkana

1980, no writ) (no estoppel because contract void as contrary to public policy).[3] The elements of estoppel are:

1. a false representation or concealment of material facts,

2. made with knowledge, actual or constructive, of those facts,

3. to a party without knowledge, or the means of knowledge, of those facts,

4. with the intention that it should be acted on, and

5. the party to whom it was made must have relied or acted on it to his prejudice.

*LaRue v. LaRue*, 832 S.W.2d at 392; *accord Gawlik v. Gawlik*, 707 S.W.2d at 259.

■ Raymond established the first two elements of estoppel by showing that Rose Ann represented to him that he was no longer Jessica's father, when she knew that Raymond's parental rights had not been terminated and that Adams had never pursued the adoption of Jessica. For thirteen years she led Raymond and his family to believe that his rights had been terminated, both by affirmative statements and by failing to apprise him of the true situation. When Rose Ann and Adams unilaterally decided not to pursue the termination and adoption, a duty arose to notify Raymond of that decision. *See LaRue v. La-Rue*, 832 S.W.2d at 392–93. "Where a party is under a duty to speak, silence may give rise to estoppel as effectively as spoken words." *Id.* at 393.

Raymond also satisfied the third element stated above—that he did not have knowledge of Rose Ann and Adam's decision not to adopt Jessica, or the means to discover that fact. When Raymond executed the document surrendering his parental rights, he stopped making child support payments and was denied any further visitation. Rose Ann never complained of his failure

---

3. Contrary to Rose Ann's assertions, *Ex parte Payne*, 598 S.W.2d 312, does not hold that estoppel cannot apply in an action to collect past-due child support. The court in that case found that the contract between the parties was void and, thus, there could be no contractual estoppel in that case. *Id.* at 317.

For other cases acknowledging that estoppel may be asserted in an action to collect past-due child support payments, see *Cunniff v. Johnson*, 584 S.W.2d 543, 544 (Tex.Civ.App.—Fort Worth 1979, writ dism'd) (laches applies if accompanied by estoppel); *Mitchell v. Mitchell*, 575 S.W.2d 311, 312 (Tex.Civ.App.—Dallas 1978, no writ) (laches applies if accompanied by estoppel); *Houtchens v. Matthews*, 557 S.W.2d 581, 585–86 (Tex.Civ.App.—Fort Worth 1977, writ dism'd) (discussing sufficiency of evidence of estoppel).

to make payments, and began calling the child by the name "Adams." She continued to use this name until the time of the hearing. Thus, there was no outward manifestation that Rose Ann and Adams had not consummated the proceedings to terminate Raymond's rights and adopt Jessica. *See LaRue v. LaRue*, 832 S.W.2d at 393.

We agree with the *LaRue* court's assessment of Raymond's duty to monitor the status of any court proceedings:

> [W]e will not require a layman to continually attempt to monitor the progress of a court case, or hire a lawyer to do so, when the parties have done nothing to place him on notice of the reversal of their intentions, and every factor had demonstrated that the termination proceeding had been consummated.... Thus, until there was information available to Appellant that would have alerted him that his parental rights might not have been terminated, Appellant neither knew nor had the means of knowing that he should investigate the status of the adoption proceedings.

*LaRue v. LaRue*, 832 S.W.2d at 393. There was no information available to Raymond that would have alerted him that his parental rights had not been terminated until the contempt proceeding here at issue. As noted above, Rose Ann continually denied him access to the child and called the child by her purported adopted name. The third element was satisfied.

The fourth element requires proof that Rose Ann intended the concealed information to be acted upon. Raymond showed that after he executed the termination document, Rose Ann terminated his visitation rights and refused to let Jessica see his family if he was present. Raymond testified that he would have exercised his visitation rights had he known that his parental rights were not terminated. Again, *LaRue* is instructive: "From this evidence, we conclude that by concealing Appellant's parental status from him, Appellee intended for Appellant to cease his efforts to exercise his visitation rights with [the child]." *LaRue v. LaRue*, 832 S.W.2d at 394. Similarly, we conclude that, by failing to inform him that his parental rights were not terminated, Rose Ann intended for Raymond to cease any efforts to exercise visitation rights with Jessica.

Finally, the fifth element requires proof that Raymond relied to his detriment on Rose Ann's misrepresentation. Jessica was not yet two years old at the time the termination document was signed and Rose Ann denied further visitation. At the time of the contempt hearing, Jessica was almost fifteen years old. Raymond testified that he would have exercised his visitation rights and would have maintained a parent-child relationship with Jessica if he had known that she was still his legal daughter. Because Rose Ann concealed his true status as Jessica's father for thirteen years, Raymond has been deprived of the opportunity to enjoy a paternal relationship (or any relationship) with his daughter, and of the chance to share in her childhood. This evidence certainly satisfies the fifth element of estoppel. *See LaRue v. LaRue*, 832 S.W.2d at 394–95.

■ We acknowledge that both *LaRue v. LaRue* and *Ex parte Payne* are factually similar to the case at bar, yet those courts reached contrary results in considering the defense of estoppel. In both cases the parties entered an agreement to relinquish parental rights and the father thereafter ceased paying child support. The *Payne* court held that the agreement was void as against public policy, and therefore it could not serve as a basis for estoppel. 598 S.W.2d at 317. The *LaRue* court did not address whether the underlying contract was void, and it does not appear that that was an issue in the case. In this regard, our case is more similar to *LaRue*. Rose Ann asserts in her reply brief to this court that the termination document signed by Raymond did not meet statutory requirements and that it was void as against public policy. Neither of these arguments was raised below and they may not be raised for the first time on appeal. *See* TEX.R.APP. P. 52(a); *Intermarkets U.S.A., Inc. v. C-E Natco*, 749 S.W.2d 603, 606 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (must bring error to trial court's attention in some manner). Because the agreement was not challenged in the trial

court, we hold that it can afford the basis for the asserted defense of estoppel.

The trial court correctly held that estoppel applied to the present case, and there is ample evidence to support the finding of estoppel. Point of error five is overruled.

The judgment is affirmed.