

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00159-CV

IN THE INTEREST OF C.E.S.,
MINOR CHILD

----------

FROM THE 97TH DISTRICT COURT OF CLAY COUNTY

----------

## OPINION

----------

## I. INTRODUCTION

The sole issue that we address in this appeal is whether the defense of estoppel is available in a suit to enforce unpaid child support brought by the Office of the Attorney General (OAG) in its capacity as an assignee. Because we hold that estoppel is available as a defense in an enforcement action brought by the OAG as an assignee of a parent obligee, we will reverse and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Appellant Richard Lynn Scholer, Jr. fathered a son, C.E.S., with Denise Louise Scholer. Denise divorced Richard in 1994 in California. In the divorce decree, the trial court ordered Richard to pay $450 per month in child support "until further order of the court, the child dies, marries, is emancipated, reaches the age of 19, or the age of 18 and is not a full time high school student residing with a parent, whichever occurs first."

Richard made payments of $450 a month for several months and then began paying $300 a month upon the oral agreement of Denise. Richard made payments through 1999.

In a letter to Denise dated July 12, 2000, Richard explained his frustration at being continually denied the opportunity to speak to C.E.S. and to visit with him. Richard asked Denise to confirm whether she wanted him to be C.E.S.'s father and whether she no longer needed his child support payments. Approximately two weeks later, Richard received a letter from Denise's attorney, Michael Curtis, asking whether Richard would be agreeable to signing an affidavit to terminate his parental rights to C.E.S. The letter stated, "As you are aware, a termination of your rights would also terminate any support obligation which you may have in the future."

Two months later, Curtis sent another letter to Richard, enclosing a revised "Father's Affidavit for Voluntary Relinquishment of Parental Rights" and asking

2

Richard to sign it in front of two witnesses and a notary and return it to Curtis.

The affidavit stated, among other things,

> I am presently obligated by court order to make payments for the support of the child.
>
> . . . .
>
> . . . I have been informed that my parental rights, powers, duties, and privileges are as follows:
>
> . . . .
>
> 3. the duty to support the child, including providing the child with clothing, food, shelter, medical and dental care, and education;
>
> . . . .
>
> I freely and voluntarily give and relinquish to Denise Louise Wilbourn all my parental rights and duties.
>
> I fully understand that a lawsuit will be promptly filed in a court of competent jurisdiction to terminate forever the parent-child relationship between me and the child named above. . . .
>
> I know that I have the right to appear personally before the Court, with an attorney of my choice, to testify about my desires with respect to my child. However, I do not want to go to court in person and choose not to be represented by a lawyer. I want this Affidavit for Voluntary Relinquishment of Parental Rights presented to the Court.
>
> Because I do not want to testify in person before the Court, I freely and voluntarily waive and give up my right to the issuance, service, and return of citation, notice, and all other process in any suit to terminate my parental rights or in any suit to terminate my parental rights joined with a suit to adopt. I do not want to be informed further about the lawsuit. I specifically agree that a final hearing in the lawsuit may be held at any time without further notice to me. . . .

3

. . . .

I FULLY UNDERSTAND THAT I MAY NOT BE FURTHER INFORMED ABOUT THE TERMINATION SUIT OR ABOUT ANY OTHER HEARINGS OR PROCEEDINGS AFFECTING THE CHILD NAMED IN THIS AFFIDAVIT.

Richard signed and returned the affidavit to Curtis and did not hear further from him or Denise.[1] Richard assumed that his parental rights were terminated and discontinued making child support payments.

Nine years later, in September 2009, the OAG filed a "Notice Of Registration Of Foreign Support Order (UIFSA)" in the 97th District Court of Clay County. The OAG also filed a "Motion For Enforcement And Suit For Modification Of Support Order," requesting that the trial court confirm an arrearage from May 1994 through 2009. Richard answered with a general denial and pleaded several defenses, including the affirmative defense of estoppel.

The trial court held a hearing on the OAG's motion to enforce and heard testimony from Denise and Richard. Denise testified that she never followed through with the termination, that she knew that the termination did not "go through," and that she did not feel that she had a duty to notify Richard. She also testified that she and Curtis had parted ways after he sent the letter in 2000,[2] that she had never tried to contact him, that she was not notified that Richard had

---

[1]Neither Richard's attorney nor the attorney for the OAG contacted Curtis to see if he had received Richard's affidavit.

[2]Denise testified that Curtis "was in trouble for methamphetamines."

4

signed the affidavit, and that she did not see Richard's affidavit of relinquishment until December 2009. She denied that a conspiracy existed to have Richard "rack up a bunch of child support arrearages" while being denied involvement in his son's life.

Richard testified that he had paid $11,725 in child support before he signed the affidavit but that his bank did not have records dating back to 1994 to prove all of his payments. After signing the affidavit of relinquishment, he did not expect to hear back because of the "no further notice" provision. He had no further contact with Denise or C.E.S. after September 2000. He had no knowledge that his parental rights had not been terminated until 2009 when he received a notice that child support would be deducted from his paycheck.

After hearing the testimony, the trial court signed an order confirming that Richard was in arrears in the amount of $77,875 as of March 26, 2010. The trial court made findings of fact and conclusions of law, including a conclusion of law that Richard's defense of estoppel was not available. Richard now appeals from the trial court's order modifying his child support payments and confirming a $77,875 arrearage.

### III. DEFENSE OF ESTOPPEL IS AVAILABLE

In his sole point, Richard argues that the trial court erred by ruling that as a matter of law the defense of estoppel is not available in a child support enforcement suit brought by the OAG. We review a trial court's conclusion of law

de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

The OAG is Texas's Title IV-D agency. Tex. Fam. Code Ann. § 231.001 (Vernon 2008). As Texas's Title IV-D agency, the OAG may file suit for modification of child support or a motion for enforcement of child support. *Id*. § 102.007 (Vernon 2008), § 231.105(a) (Vernon Supp. 2010). The OAG sues to enforce child support based on an actual or an implied assignment from the parent owed support, the obligee. *Id*. §§ 231.102, .104, .106, .107 (Vernon 2008); *In re T.L.K.*, 90 S.W.3d 833, 839–40 (Tex. App.—San Antonio 2002, no pet.) (explaining that "[t]he OAG generally enforces child support under an assignment of the support rights"); *In re A.M.E.*, 71 S.W.3d 401, 402–03 (Tex. App.—San Antonio 2001, no pet.) (same); *see also Office of Attorney Gen. v. Crawford*, 322 S.W.3d 858, 860–62 (Tex. App.—Houston [1st Dist.] 2010, pet. filed) (holding OAG lacked standing to file suit to modify existing child support order to provide support for adult disabled children absent assignment of support rights). Child support payments assigned for collection to the OAG must be made payable to the OAG. Tex. Fam. Code Ann. § 231.105(a); *A.M.E.*, 71 S.W.3d at 403.

Any parent obligee under a support order may refuse Title IV-D enforcement services unless required to accept such services pursuant to other law. *See* Tex. Fam. Code Ann. § 231.0011(c) (Vernon 2008). A parent obligee is required to accept such services upon approval of an application for or the

6

receipt of financial assistance as provided by chapter 31 of the Human Resources Code; approval of an application or receipt of financial assistance constitutes an assignment to the Title IV-D agency of any rights to support from any other person that the applicant or recipient may have personally or for a child for whom the applicant or recipient is claiming assistance. Tex. Fam. Code Ann. § 231.104(a).

Because the OAG as Texas's Title IV-D agency brings suit to collect child support pursuant to either an actual or implied assignment of the child support order's obligee, the OAG steps into the shoes of the assignor/obligee and takes the assigned rights subject to all defenses the opposing party might be able to assert against the assignor/obligee. *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (stating that "it is axiomatic that an assignee or subrogee walks in the shoes of his assignor and takes the assigned rights subject to all defenses which the opposing party might be able to assert against his assignor"); *Trueheart v. Braselton*, 875 S.W.2d 412, 415 (Tex. App.—Corpus Christi 1994, no writ); *Irrigation Ass'n v. First Nat'l Bank of Frisco*, 773 S.W.2d 346, 348 (Tex. App.—Dallas 1989, writ denied); *Vogt v. Jones*, 396 S.W.2d 539, 540 (Tex. Civ. App.—Fort Worth 1965, no writ). In a private child support enforcement suit brought by an obligee parent against an obligor parent, the defense of estoppel is available. *See Kawazoe v. Davila*, 849 S.W.2d 906, 908–09 (Tex. App.—San Antonio 1993, no writ) (holding "estoppel is available as a defense and was properly proved in this case [an action to enforce child

7

support]"); *LaRue v. LaRue*, 832 S.W.2d 387, 392–93 (Tex. App.—Tyler 1992, no writ) (holding that "the trial court's third conclusion of law pertaining to the unavailability of the estoppel defense in the instant [child support enforcement] case was erroneous"); *see also Hall v. Hall*, No. 09-06-00206-CV, 2007 WL 2127133, at *3 (Tex. App.—Beaumont July 26, 2007, no pet.) (mem. op.) (holding that appellant's conduct supported application of the equitable doctrine of estoppel in suit between mother and father involving alleged child support arrearage). Thus, because the defense of estoppel is available to an obligor in a suit for child support enforcement brought by the obligee, we hold that the OAG, as the assignee of the obligee, is likewise subject to the defense of estoppel.

The OAG in this appeal argues that in prosecuting a child support enforcement suit as Texas's Title IV-D agency, it is a state agency performing a state function and, consequently, cannot be subject to the defense of estoppel. The OAG points to family code section 231.109. Tex. Fam. Code Ann. § 231.109(d) (Vernon 2008). That section is titled "Attorneys Representing State" and provides in pertinent part,

> (d) An attorney employed to provide Title IV-D services represents the interest of the state and not the interest of any other party. The provision of services by an attorney under this chapter does not create an attorney-client relationship between the attorney and any other party. The agency shall, at the time an application for child support services is made, inform the applicant that neither the Title IV-D agency nor any attorney who provides services under this chapter is the applicant's attorney and that the attorney providing services under this chapter does not provide legal representation to the applicant.

8

*Id.* This statutory provision does not indicate that—in collecting child support pursuant to an assignment of child support rights from Denise—the OAG is performing a state function;[3] it simply statutorily defines the parameters of the relationship between an attorney employed to provide Title IV-D services and the individual receiving the services.

It is true, as the OAG contends here, that as a general rule when a unit of government is exercising its governmental powers, it is not subject to estoppel. *See State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993) (no estoppel against state asserting right to royalties from mineral interest retained by state in permanent school fund lands); *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835–36 (Tex. 1970) (no estoppel against city exercising zoning power to classify land as residential); *City of San Antonio v. Pigeonhole Parking of Tex.*, 311 S.W.2d 218, 223 (Tex. 1958) (no estoppel against city to compel issuance of permit for curb cut and a driveway across sidewalk); *Tex. Co. v. State*, 281 S.W.2d 83, 88–89 (Tex. 1955) (no estoppel against state seeking recovery of public school lands improperly conveyed or value of minerals produced from those lands); *Rolison v. Puckett*, 198 S.W.2d 74, 77–78 (Tex. 1946) (no estoppel against a city asserting a tax foreclosure); *City of San Angelo v. Deutsch*, 91 S.W.2d 308, 310 (Tex. 1936) (no estoppel against city to assert a tax lien). The rationale for this general rule is that a unit of government cannot be estopped from exercising its

---

[3]The OAG here filed only notice of registration of a foreign (California) judgment and an enforcement action.

9

governmental powers *by the actions of its employees or by those persons charged with administration of the unit of government*:

> The rule that a city is not estopped by the mistakes or unauthorized or wrongful acts of its officers or agents is thus stated in Ruling Case Law: "No estoppel can grow out of dealings with public officers of limited authority, and the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error or mistake of, or because of a wrong committed by, one of its officers or agents which has been relied upon by a third party to his detriment. So a municipality is not estopped by the unauthorized acts of its officer or agent, or by his wrongful act. Nor can an estoppel result from official fraud and corruption."

*City of San Angelo*, 91 S.W.2d at 310; *see also Durham*, 860 S.W.2d at 68 (recognizing that the acts and conduct of state's officers and agents cannot estop state from recovering royalties from mineral interest owned by state under permanent school fund lands).

The rationale for the general rule that a unit of government cannot be estopped from exercising its governmental powers by the actions of its employees or by those persons charged with administration of the unit of government is not, however, applicable when the alleged estoppel is based not on the action of the governmental employees but on the actions of an obligee who assigned child support rights to the OAG. *See Kawazoe*, 849 S.W.2d at 910–11 (holding estoppel applied based on mother's fraudulent conduct in leading father to believe his parental rights had been terminated); *LaRue*, 832 S.W.2d at 392–95 (holding estoppel applied based on mother's conduct in failing to notify father of her unilateral decision to not terminate father's parental rights);

10

*see also Hall*, 2007 WL 2127133, at *3 (holding estoppel applied based on mother's conduct). As previously mentioned, an assignee like the OAG takes the rights assigned to it subject to all defenses that the opposing party might be able to assert against his assignor—in this case, Richard's right to assert the defense of estoppel against Denise. *See Kawazoe*, 849 S.W.2d at 910–11; *LaRue*, 832 S.W.2d at 392–95. It makes no sense to hold that the OAG, suing on Denise's behalf and asserting Denise's child support rights by virtue of her assignment, is not subject to the defense of estoppel but that if Denise herself had filed the suit to enforce child support, she would have been subject to the defense of estoppel. To so hold would encourage a parent who was awarded child support to replicate what appears to have happened here—to procure an affidavit of relinquishment from the obligor-parent, to never file suit to terminate the obligor-parent's parental rights, to wait for a child support arrearage to accrue because the obligor-parent believes that his parental rights have been terminated, to exclude the obligor from the child's life until the child is almost an adult or is an adult, to forego filing suit on her own behalf because the defense of estoppel would apply, and to instead make an assignment to the OAG to collect the child support arrearage based on the assumption that the defense of estoppel does not apply to the OAG.

Finally, the provision of child support enforcement services does not seem to be an exercise of sovereign power like the powers exercised by the state or by cities in the Texas Supreme Court cases that recognize when a unit of

11

government is exercising its governmental powers, it is not subject to estoppel. *See Durham*, 860 S.W.2d at 67 ("the State in its sovereign capacity" acting to collect royalties); *City of Hutchins*, 450 S.W.2d at 835–36 (city classifying land as residential); *City of San Antonio*, 311 S.W.2d at 223 (city declining to issue permit for curb cut and a driveway across sidewalk); *Tex. Co.*, 281 S.W.2d at 88–89 (state recovering public school lands improperly conveyed or value of minerals produced from those lands); *Rolison,* 198 S.W.2d at 77–78 (city asserting a tax foreclosure); *City of San Angelo*, 91 S.W.2d at 309 (city asserting tax lien).

Two courts of appeals that have addressed the issue of whether the defense of estoppel is available in a suit against the OAG to collect unpaid child support have answered the issue in the negative. *See T.L.K.*, 90 S.W.3d at 839–40; *Rider v. Office of the Attorney Gen.*, No. 12-05-00418-CV, 2007 WL 3015455, at *5 (Tex. App.—Tyler Oct. 17, 2007, no pet.) (mem. op.). The opinions of our sister courts are not binding on us, and we decline to follow them because they do not analyze or address the fact that the OAG provides child support collection services pursuant to an assignment from the obligee or the fact that the OAG is not performing a state function in collecting child support. *See, e.g., Mitchell v. John Wiesner, Inc.*, 923 S.W.2d 262, 264 (Tex. App.—Beaumont 1996, no writ) (holding opinions of sister court are not binding on other courts of appeal).[4]

---

[4]The OAG also cites *In re M.C.R.*, 55 S.W.3d 104, 107 (Tex. App.—San Antonio 2001, no pet.). In *M.C.R.*, the San Antonio Court of Appeals recognized

The OAG also points to *Reyna v. Attorney General of Texas*, 863 S.W.2d 558, 558–59 (Tex. App.—Fort Worth 1993, no writ) as supporting its position. In *Reyna*, the OAG sued to determine paternity, to recoup public funds expended on the child, and to collect child support; we held that the defense of laches was not available in the paternity suit and that because the OAG sued within limitations to recoup public funds and to collect child support, "Reyna cannot assert the defense of laches." *Id.* at 559. Thus, our holding in *Reyna* was limited to the inapplicability of a pure time-driven laches defense; we did not address whether the OAG was subject to the defense of estoppel based on the conduct of the assignor/obligee. *See Attorney Gen. of Tex. v. Duncan*, 929 S.W.2d 567, 572 (Tex. App.—Fort Worth 1996, no writ) (citing *Reyna* for the proposition that "laches is not a defense available against the Attorney General in a paternity suit").

Based on our de novo review, we hold that the trial court erred by concluding as a matter of law that the defense of estoppel is not available to Richard in the enforcement suit filed by the OAG as an assignee of Denise's rights to child support payment. We sustain Richard's sole point.

---

that the OAG possessed standing to appeal after it obtained a judgment in a child support action pursuant to "the assignment of rights from Riou." *Id*. No holding in *M.C.R.* conflicts with our holding here that the defense of estoppel is available in a suit to enforce unpaid child support brought by the OAG in its capacity as an assignee.

## IV. CONCLUSION

Having sustained Richard's sole point, we reverse the trial court's judgment and remand for the trial court to conduct a new hearing at which Richard may present evidence on his affirmative defense of estoppel.

SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  June 2, 2011