Opinion issued August 31, 2010

     




 
 
 
 
 




 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 



 

NO.
01-09-01099-CV

 



 

IN RE MARY
LYNN MABRAY, Relator

 



 

Original
Proceeding on Petition for Writ of Mandamus

 



 

DISSENTING OPINION

 

The central issue in this case of first impression
interpreting Texas’s collaborative law statute, Section 6.603 of the Texas
Family Code, is whether a “cooperative law agreement” that is not provided for
by statute and whose provisions track and conflict with the provisions of the
collaborative law statute and the arbitration provision within it are valid and
enforceable under Texas law or void as against public policy.  The majority holds that both the “cooperative
law agreement” and its arbitration clause are valid and enforceable.  I would hold that neither is.

By petition for writ of mandamus, relator, Mary Lynn Mabray,
challenges the trial court’s October 30, 2009 order (1) ordering the parties to
arbitration under the terms of the parties’ “Cooperative Law Dispute Resolution
Agreement” (“the Agreement”) and (2) denying her motion to disqualify Brenda
Keen, counsel for her ex-husband, Gary Allen Mabray, for failing to withdraw as
counsel following the failure of settlement efforts under the cooperative law
agreement.

Mary argues that the Agreement is “void and/or unenforceable”
because (1) it fails to comply with Texas’s collaborative law statute,
including its provision that collaborative counsel withdraw if no settlement
agreement is reached; (2) enforcement of the Agreement would violate
public policy as reflected in the collaborative law statute because she would
be required to participate in further litigation against counsel disqualified
by statute; (3) the trial court clearly abused its discretion by requiring her
to proceed to arbitration under an alternative dispute  resolution agreement that fails to comply
with Texas statutory law and is against public policy; and (4) even if formerly
enforceable, the Agreement and the arbitration clause within it are no longer
enforceable because Gary materially breached the agreement and, in response,
she revoked her consent to the agreement and terminated it.  Gary opposes Mary’s arguments and contends
her petition for writ of mandamus is barred by laches.  

I agree with the majority that Mary’s petition is not barred
by laches.  I would hold, however, that
both the “cooperative law agreement” and the arbitration provision within it
are void and unenforceable as against the public policy of the State of Texas.  Therefore, I would provisionally grant
mandamus relief.

Background

 

After 35 years of marriage, Mary discovered her husband Gary’s
ongoing infidelity and sought a divorce. 
She retained Harry L. Tindall, who recommended that the parties engage
in a process called “cooperative law” to settle the divorce.  On February 12, 2008, Mary and Gary and their
attorneys signed a four page document titled “Cooperative Law Dispute
Resolution Agreement.”  The Agreement was
not filed with the trial court. 

The Agreement acknowledged the parties’ “shared belief that
it is in the best interests of the parties to avoid litigation.”  Thus, it stated that the parties agree to “effectively
and honestly communicate with each other with the goal of efficiently and
economically settling the terms of the dissolution of the marriage.”  The Agreement provided for the joint retention
of experts, if needed, and it forbade formal discovery unless agreed upon,
relying instead on the parties’ agreement to deal with each other in “good faith.”  It further provided,

No formal discovery procedure will be used
unless specifically agreed to in advance. 
The parties will be required to sign a sworn inventory and appraisement
if requested by the other party.

 

We acknowledge that, by using informal
discovery, we are giving up certain investigative procedures and methods that
would be available to us in the litigation process.  We give up these measures with the specific
understanding that the parties will make to each other a complete and accurate
disclosure of all assets, income, debts, and other information necessary for us
to reach a fair settlement. 
Participation in this process is based on the assumptions that we have
acted in good faith and that the parties have provided complete and accurate information
to the best of their ability. 

 

Also included in the Agreement was an arbitration
provision, which stated:

The parties further agree that if this
case has not been settled by negotiation and an Agreed Final Decree of Divorce
has not been submitted to and signed by the Court before April 30, 2009 then
this matter will be submitted to binding arbitration pursuant to the Joint
Motion for Referral to Arbitration and Agreed Order of Referral to Arbitration
attached hereto and made a part hereof.

 

The parties agree to be bound by this
agreement, the Texas Alternative Dispute Resolution Procedures Act (chapter 154
of the Texas Civil Practice and Remedies Code), the Texas General Arbitration
Law (chapter 171 of the Texas Civil Practice and Remedies Code), Section 6.601,
Texas Family Code, and the laws of the state of Texas.

 

The
cooperative law process failed, and an agreed final decree of divorce was not
submitted to the court by April 30, 2009. 
Neither party had requested a sworn inventory and appraisement.

On March 11, 2009, the parties jointly moved for referral to
arbitration, and, on March 18, 2009, the court entered the first Agreed Order
for Referral to Arbitration, appointing an arbitrator and scheduling the
arbitration for June 18, 2009.  When the
arbitrator realized that he had consulted with Mary regarding the divorce and
thus could not serve as arbitrator, Gary filed an Opposed Motion to Appoint
Substitute Arbitrator and For Entry of Order of Referral to Arbitration.  The parties’ agreed order appointing Donald
R. Royall as substitute arbitrator was signed by the trial court on August 12,
2009, and the arbitration was scheduled for August 25 and 26, 2009.

In early August, Mary terminated her attorney-client
relationship with Tindall and hired new counsel, Stephen Shoultz.  Thereafter, Mary moved to disqualify Gary’s
counsel, Brenda Keen, on grounds that the Agreement was contrary to Texas
public policy and therefore invalid. 
Specifically, Mary asserted that the Agreement sought to “contract
around” Texas’s collaborative law statute, section 6.603 of the Family
Code.  Because Brenda Keen would be
unable to continue to represent Gary in litigation under a collaborative law
agreement once the collaborative process had failed, Mary contended that, so
too, Keen must be disqualified after the cooperative process failed.  Mary also moved to revoke her consent to
arbitration.  She stated that Tindall had
“forced” her to sign the Agreement while she was “emotionally distraught” over
the divorce and under the influence of tranquilizers.  She further contended that Gary “failed to
truthfully and voluntarily disclose relevant information, including complete
and accurate disclosure of all assets.” 
Gary moved to enforce the Agreement and to compel arbitration, arguing
that the Texas collaborative law statute is inapplicable to the parties’
cooperative law agreement.  

The trial court heard all motions on September 17, 2009.  At the hearing, Mary contended that Gary had
breached the cooperative law agreement by concealing assets, but Gary’s counsel
asserted that the arbitrator, not the trial court, should determine whether he had
breached the Agreement.  Gary himself did not attend the hearing,
despite having been subpoenaed to attend and bring financial documents.  

The trial court verified that no notice of collaborative law
proceedings had been filed with the court and no order had been signed by the
trial court setting the dates for status reports,[1]
as required by the collaborative law statute, section 6.603 of the Family Code.[2]  The court reasoned that it could not impose
an “attorneys-have- to-withdraw provision” in a non-collaborative law case,
stating,

The Code certainly includes, encourages
all forms of ADR; and if they want to enter into an agreement which,
apparently, they both signed, and call it Cooperative Law Agreement and it has
some mechanisms to try to resolve the case through ADR rather than coming to
the Court, I don’t think there’s any assumption that they can’t do that.

 

Mary’s counsel argued that Mary had revoked her consent to
arbitration, and therefore there was no valid agreement to arbitrate, and she
also argued that the trial court was required to determine whether a valid
agreement existed.  He further argued
that the cooperative law agreement operated as a collaborative law agreement
but violated Texas law by not providing for the withdrawal of attorneys, as
required by Texas’s collaborative law statute. 
He stated, “There is no basis in Texas law to just substitute in the word
cooperative for collaborative and then say the statute does not exist.”  

Gary’s counsel argued that breach of contract issues were a
matter for the arbitrator to decide.  She
also argued that the agreement was not a collaborative law agreement under the
Texas statute, that “[n]o notice of collaborative law proceeding was filed, and
the case had not been put on the collaborative track or no notice of updates,
nothing.”  

The trial court agreed with Gary’s counsel and granted Gary’s
motion.  On October 30, 2009, the court
signed an order compelling arbitration, which provides, in part: 

This case was not resolved by agreement of
the parties before April 30, 2009, and the parties are required to arbitrate
their divorce action pursuant to the Cooperative Law Dispute Resolution
Agreement signed by the parties on February 12, 2009. . . .

 

It is ordered that Mary Lynn Mabray’s
Motion to Disqualify Brenda Keen is hereby denied.

 

It is ordered that Mary Lynn Mabray’s
First Amended Motion to Revoke Consent to Arbitration and Request for Jury
Trial is hereby denied.

 

The trial court signed findings of fact and conclusions of
law on October 21, 2009.  

On November 25, the court signed additional findings of fact
and conclusions of law that state:

1.       Brenda Keen is not required to withdraw
as attorney for Gary Allen Mabray after the parties failed to reach a
settlement under the Cooperative Law Dispute Resolution Agreement. 

 

2.       The Cooperative Law Dispute Resolution
Agreement is not governed by Texas Family Code § 6.603.

 

3.       The Cooperative Law Dispute Resolution
Agreement does not violate Texas Public Policy.

 

4.
     Brenda Keen is not disqualified to
represent Gary Allen Mabray.

 

On December 22, 2009, Mary petitioned for writ of mandamus.

Standard of Review

Mandamus relief is available only to correct a “clear abuse
of discretion” when there is no adequate remedy by appeal.  Walker v. Packer, 827 S.W.2d 833, 839–40
(Tex. 1992) (orig. proceeding).  A clear
abuse of discretion occurs when a trial court “reaches a decision so arbitrary
and unreasonable as to amount to a clear and prejudicial error of law.”  Id. at 839.  The reviewing court may not substitute its
judgment for that of the trial court when reviewing factual issues.  Id.  Even if the reviewing court would have decided
the issue differently, it cannot disturb the trial court’s decision unless the
decision is shown to be arbitrary and unreasonable.  Id. at 840.  Appellate review of a trial court’s
determination of the legal principles controlling its ruling, however, is much
less deferential.  Id.; In re
Ching, 32 S.W.3d 306, 310 (Tex. App.—Amarillo 2000, orig. proceeding).  A trial court has no “discretion” in
determining what the law is or in applying it to the facts.  Walker, 827 S.W.2d at 840; Ching,
32 S.W.3d at 310.  A clear failure of the
trial court to analyze or apply the law correctly constitutes an abuse of
discretion that may result in the grant of an extraordinary writ.  Walker, 827 S.W.2d at 840; Ching,
32 S.W.3d at 310. 

Collaborative and
Cooperative Law

Mary argues that (1) the parties Cooperative Law Dispute
Resolution Agreement is void or unenforceable as against public policy because
it fails to comply with Texas’s collaborative law statute, including its
provision that collaborative counsel withdraw if no settlement agreement is
reached; (2) enforcement of the Agreement would violate public policy by
requiring her to participate in further litigation against counsel disqualified
by statute; and (3) the trial court clearly abused its discretion by requiring
her to proceed to arbitration under an alternative dispute resolution agreement
that fails to comply with Texas’s collaborative law statute and is against
public policy.  Mary contends that “[u]sing
a slightly different title for the ADR agreement does not avoid the protections
of the statute.”  Gary responds to these
three issues that the collaborative law statute is inapplicable to a
cooperative law agreement.[3]

          The central issue in the case is,
thus, whether, in the absence of a duly promulgated cooperative law statute,
the public policy of the State of Texas permits marriages to be dissolved
pursuant to private “cooperative law” agreements, unauthorized by statute,
whose provisions track and conflict with the provisions of Texas’s
collaborative law statute.  I would hold,
on the basis of Texas public policy regarding the dissolution of marriage as
set out in Texas’s statutes, the legislative history of the collaborative law
statute, and Texas case law, that the parties’ “cooperative law” agreement is
an illegal contract whose enforcement is contrary to the public policy of the
State of Texas.  I would, therefore, hold
the agreement void.

1.                
Collaborative Law and Cooperative Law Defined

I generally agree with and adopt the majority’s statement of
the distinction between collaborative law and cooperative law.  

Essentially, collaborative law is a variety of alternative
dispute resolution, most commonly used in the divorce context, that “provides
for an advance agreement entered into by the parties and the lawyers in their
individual capacities, under which the lawyers commit to terminate their
representations in the event the settlement process is unsuccessful and the matter
proceeds to litigation.”  Janet Martinez &
Stephanie Smith, An Analytic Framework for Dispute Systems Design, 14 Harv. Negot. L. Rev. 123, 166 (2009).  

Texas provides by statute for the dissolution of a marriage
in accordance with the collaborative law procedures set out in section 6.603 of
the Family Code, which provides, in part:

          (a)     On
a written agreement of the parties and their attorneys, a dissolution of
marriage proceeding may be conducted under collaborative law procedures.

 

                   (b)     Collaborative law is a procedure in which the parties and their
counsel agree in writing to use their best efforts and make a good faith
attempt to resolve their dissolution of marriage dispute on an agreed basis
without resorting to judicial intervention except to have the court approve the
settlement agreement, make the legal pronouncements, and sign the orders
required by law to effectuate the agreement of the parties as the court
determines appropriate.  The parties’
counsel may not serve as litigation counsel except to ask the court to approve
the settlement agreement.

 

                   (c)      A collaborative law agreement must include provisions for:

 

                             (1)     full and candid exchange of information
between the parties and their attorneys as necessary to make a proper evaluation
of the case;

 

                             (2)     suspending court intervention in the
dispute while the parties are using collaborative law procedures;

 

                             (3)     hiring experts, as jointly agreed, to be
used in the procedure;

 

                    (4)     withdrawal of all counsel involved in the
collaborative law procedure if the collaborative law procedure does not result
in settlement of the dispute; and

 

                             (5)     other provisions as agreed to by the
parties consistent with a good faith effort to collaboratively settle the
matter.

 

                   (d)     Notwithstanding Rule 11, Texas Rules of Civil Procedure, or
another rule or law, a party is entitled to judgment on a collaborative law
settlement agreement if the agreement:

 

                             (1)     provides, in a prominently displayed
statement that is boldfaced, capitalized, or underlined, that the agreement is
not subject to revocation; and 

 

                             (2)     is signed by each party to the agreement and
the attorney of each party.

 

(e)     Subject
to Subsection (g), a court that is notified 30 days before trial that the
parties are using collaborative law procedures to attempt to settle a dispute
may not, until a party notifies the court that the collaborative law procedures
did not result in a settlement:

 

          (1)
    set a hearing or trial in the case;

 

          (2)     impose discovery deadlines;

 

          (3)     require compliance with scheduling orders;
or

 

          (4)     dismiss the case.

 

                   (f)     The
parties shall notify the court if the collaborative law procedures result in a
settlement.  If they do not, the parties
shall file:

 

                             (1)     a status report with the court not later
than the 180th day after the date of the written agreement to use the
procedures; and 

          

                             (2)     a status report on or before the first
anniversary of the date of the written agreement to use the procedures,
accompanied by a motion for continuance that the court shall grant if the
status report indicates the desire of the parties to continue to use
collaborative law procedures.

 

                   (g)     If the collaborative law procedures do not result in a settlement
on or before the second anniversary of the date that the suit was filed, the
court may:

(1) set the suit for trial on the regular
docket; or

 

(2) dismiss the
suit without prejudice.

.
. . .

 

Tex. Fam. Code Ann. § 6.603 (Vernon 2006).

By contrast, cooperative law is essentially “a process which
incorporates many of the hallmarks of Collaborative Law but does not require
the lawyer to enter into a contract with the opposing party providing for the
lawyer’s disqualification.” Martinez & Smith, 14 Harv. Negot. L. Rev. at 166. 
Texas has no cooperative law statute.

          3.       Texas Public
Policy

“It is the policy of [Texas] to encourage the peaceable
resolution of disputes . . . and the early settlement of pending
litigation through voluntary settlement procedures.”  Tex.
Civ. Prac. & Rem. Code Ann. § 154.002 (Vernon 2005).  Texas public policy also strongly favors “preserving
the freedom of contract.”  Lawrence v.
CDB Servs., Inc., 44 S.W.3d 544, 553 (Tex. 2001), superseded by statute on other grounds, Tex. Lab. Code Ann. § 406.003(e), as recognized in Storage & Processors, Inc. v. Reyes, 134
S.W.3d 190 (Tex. 2004).  However, “[t]he
courts will not enforce a contract whose provisions are against public policy.”  Sacks v. Dallas Gold & Silver Exch.,
Inc., 720 S.W.2d 177, 180 (Tex. App.—Dallas 1986, no writ); accord Lawrence,
44 S.W.3d at 555 (Baker, J., dissenting) (noting, “On several occasions, we
have held otherwise freely-entered contracts void because they were contrary to
public policy” (citing, e.g., Juliette Fowler Homes, Inc. v. Welch
Assocs., Inc., 793 S.W.2d 660, 663 (Tex. 1990))).

Texas expresses its public policy through its statutes.  Tex. Commerce Bank,
N.A. v. Grizzle, 96 S.W.3d 240, 250 (Tex. 2002) (quoting Lawrence,
44 S.W.3d at 553).  Therefore, “to
determine whether a contract violates public policy, we consider the policies
underlying any applicable statutes.”  Jankowiak
v. Allstate Property & Cas. Ins. Co., 201 S.W.3d 200, 210 (Tex. App.—Houston [14th Dist.] 2006, no pet.)
(quoting Lawrence, 44 S.W.3d at 555 (Baker, J., dissenting)).

Whether a contract violates public policy is a question of
law the courts review de novo.  Id. at 209.  Generally, if a contract violates public
policy it is void, not merely voidable.  Lawrence, 44 S.W.3d at 555 (citing, e.g., Tom
L. Scott, Inc. v. McIlhany, 798 S.W.2d 556, 560 (Tex. 1990)).  When a contract is void, neither party is
bound thereby.  Ex parte Payne,
598 S.W.2d 312, 317 (Tex. Civ. App.—Texarkana 1980, no writ), overruled on other grounds, Huff v. Huff, 648 S.W.2d 286 (Tex. 1983).
 Neither estoppel nor ratification will
make a contract that violates public policy enforceable.  Lawrence, 44 S.W.3d at 555–56 (Baker,
J., dissenting) (citing Richmond Printing
v. Port of Houston Auth., 996 S.W.2d 220, 224 (Tex. App.—Houston [14th Dist]
1999, no pet.) and Ex parte Payne,
598 S.W.2d at 317). The appropriate test when considering whether a contract
violates public policy “is whether the tendency of the agreement is injurious
to the public good, not whether its application in a particular case results in
actual injury.”  Hazelwood v. Mandrell
Indus. Co., 596 S.W.2d 204, 206 (Tex. Civ. App.—Houston [1st Dist.] 1980,
writ ref’d n.r.e.).   

4.       Texas Public Policy Regarding Marriage:  Section 1.101 of the 

Family Code

 

          Texas has expressly set out its public
policy with respect to marriage in the Family Code, Subchapter B, “Public
Policy,” section 1.101, “Every Marriage Presumed Valid,” which states:

          In
order to promote the public health and welfare and to provide the necessary records,
this code specifies detailed rules to be followed in establishing the marriage
relationship.  However, in order to
provide stability for those entering into the marriage relationship in good
faith and to provide for an orderly determination of parentage and security for
the children of the relationship, it is the policy of this state to preserve
and uphold each marriage against claims of invalidity unless a strong reason
exists for holding the marriage void or voidable.  Therefore, every marriage entered into in this state is presumed to be valid
unless expressly made void by Chapter 6 or unless expressly made voidable by
Chapter 6 and annulled as provided by that chapter.

 

Tex. Fam. Code Ann. § 1.101 (Vernon 2006) (emphasis added).  Chapter 6 expressly makes voidable marriages
dissolved by collaborative law agreements made and performed in accordance with
the procedures set out in Chapter 6, section 6.603 of the Family Code.  Chapter 6 does not expressly make marriages
voidable by “cooperative law” agreements. 
Therefore, a private “cooperative law” agreement has no power to
dissolve a marriage under Texas law.  See id.; see also Capellen v. Capellen, 888 S.W.2d 539, 545–46 (Tex. App.—El
Paso 1994, writ denied) (stating, in context of analyzing “open courts” claim,
that suits for divorce and suits affecting parent-child relationship are not
subject to such common law causes of action because they are statutorily
created and regulated proceedings); Ulloa
v. Davila, 860 S.W.2d 202, 203 (Tex. App.—San Antonio 1993, no writ) (stating
that Texas law does not recognize common law divorce, and thus, marriage can be
terminated only by death or court decree) (citing Estate of Claveria v. Claveria, 615 S.W.2d 164, 167 (Tex. 1981)).  Under the plain language of section 1.101 of
the Code, a marriage purportedly dissolved in accordance with a private
“cooperative law agreement” remains presumptively valid under Texas law.

5.       Texas Public Policy Regarding
Collaborative Law: Section 6.603 of the Family Code

 

Unlike cooperative law agreements, collaborative law
agreements are statutorily approved by Chapter 6 of the Texas Family Code as a
method for dissolving a marriage under Texas law.  The public policy regarding marriage set out
in section 1.101 of the Family Code is echoed in the stated purpose of Texas’s
collaborative law statute as expressly set out both in the statute itself and
in its legislative history.  See Tex. Fam. Code Ann. § 6.603(a), (b)
(providing permission to conduct dissolution of marriage proceeding on written
agreement of parties and their attorneys and describing requirements of
statutorily valid collaborative law proceeding in detail).  

Texas’s collaborative law statute originated in Texas’s 77th Legislature as House Bill 1363,
and it was enacted as new section 6.603 of the Texas Family Code, effective
September 1, 2001.  See id. §
6.603.  The final House Bill Analysis,
dated June 12, 2001, states, under the heading, “Background and Purpose”:

Currently, different types of alternative
dispute resolution procedures are encouraged to bring about a peaceable
solution instead of litigation. 
Collaborative law, a new dispute resolution method, is being used primarily
in family law cases relating to the dissolution of a marriage and the
parent-child relationship in which the costs of a court battle can be both
personally and financially overwhelming. 
The collaborative law process offers parties the option to negotiate
in good faith for an out-of-court settlement. 
The process is entirely voluntary and participation may be terminated at
any time.  The parties agree to a full
exchange of records and to jointly hire experts.  If a settlement is not reached, the attorneys
must withdraw and the parties then employ trial counsel.  House
Bill 1363 includes the collaborative law process among other dispute resolution
methods encouraged in actions relating to the dissolution of a marriage or
suits affecting the parent-child relationship.

 

House
Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001)
(emphasis added).  

          Under the heading “Analysis,” the bill
analysis states:

House Bill 1363 amends the Family Code to
provide that a collaborative law procedure (procedure) is a specified process,
conducted under written agreement of the parties and their counsel, to reach a
settlement agreement with minimal judicial intervention in a dissolution of
marriage dispute or a suit affecting the parent-child relationship.  The bill sets forth provisions for what
the agreement must include . . . .

 

Id. (emphasis added).  The analysis also states that, for the
parties to be entitled to judgment on a collaborative law agreement, the
agreement must “provide[] in a specified manner that [it] is not subject to
revocation” and must be signed by each party and each party’s attorney.  Id. 
Finally, the analysis states that the bill requires notification to the
court if the procedures result in a settlement, or the filing of a status
report within a certain time period if they do not, and it states, “If the
procedures do not result in a settlement on or before the second anniversary of
the date that the suit was filed, the bill authorizes the court to set the suit
for trial on the regular docket or dismiss the suit without prejudice.”  Id. 

Section 6.603 of the Family Code restates the same purpose as
the bill analysis:

Collaborative law is a procedure in which
the parties and their counsel agree in writing to use their best efforts and
make a good faith attempt to resolve their dissolution of marriage dispute on
an agreed basis without resorting to judicial intervention except to have the
court approve the settlement agreement, make the legal pronouncements, and sign
the orders required by law to effectuate the agreement of the parties as the
court determines appropriate.  The
parties’ counsel may not serve as litigation counsel except to ask the court to
approve the settlement agreement.

 

Tex. Fam. Code Ann. § 6.603(b).  It then sets out the mandatory requirements
of a collaborative law agreement: 

(1) full and candid exchange of
information between the parties and their attorneys . . . ; (2) suspending
court intervention . . . while the parties are using collaborative law
procedures; (3) hiring experts, as jointly agreed . . . ; (4) withdrawal of all
counsel involved in the collaborative law procedure if the . . . procedure does
not result in settlement of the dispute; and (5) other provisions as agreed to
by the parties consistent with a good faith effort to collaboratively settle
the matter.

 

Id. § 6.603(c).  Section 6.603 also contains notice
requirements to the parties regarding the binding effect of any settlement
reached and to the court regarding any settlement, the provision of a status
report if the case is not settled within a year, and a provision that the court
may set the case for trial on the regular docket or dismiss it without
prejudice if it does not settle within two years.  Id. § 6.603(d), (f).

6.       Contravention of Texas’s Collaborative Law Statute, Section
6.603,

by
the “Cooperative Law Dispute Resolution Agreement”

 

The “cooperative law agreement” entered by the parties in
this case shows full cognizance of the statement of purpose and the safeguards
expressly enumerated in Texas’s collaborative law statute—section 6.603 of the
Family Code—and in the Bill Analysis approving collaborative law as an
alternative, statutorily approved, method for the dissolution of a
marriage.  Indeed, the Agreement’s
provisions track the provisions in the collaborative law statute and expressly contravene its protections while taking
advantage of its benefits. 

(a)  Lack of notice to the trial court of “cooperative
law agreement”  

Section 6.603 requires that parties notify the trial court of
any settlement under collaborative law procedures, but it exempts collaborative
law settlement agreements from filing with the court, which would otherwise be
required for enforceability by Texas Rule of Civil Procedure 11, if certain
conditions are met by the settlement agreement; and, in the absence of a
settlement, the statute requires the parties to notify the trial court
periodically of their progress through status reports. See Tex. R. Civ. P.
11 (providing that “no agreement between attorneys or parties touching any suit
pending will be enforced unless it be in writing, signed and filed with the
papers as part of the record, or unless it be made in open court and entered of
record”); Tex. Fam. Code Ann. § 6.603(d) (exempting
collaborative settlement agreements from compliance with Rule 11), 6.603(e)
(limiting actions that trial court may take once notified by parties that they
will use collaborative procedures), 6.603(f) (providing method for putting
trial court on notice of parties’ agreement to use collaborative law procedures
and requiring parties to submit status reports).

The parties to the “cooperative law agreement” indicated
their awareness of the provisions of section 6.603 and their purpose by
tracking the statement of the background and purpose of section 6.603 as set
out in the statute, by including in the Agreement a provision to negotiate in
good faith for an out-of-court settlement, and by agreeing to fully exchange
records and to jointly hire experts.  

However, their “cooperative law agreement” was not filed with
the court as a Rule 11 agreement, nor were status reports filed with the trial
court.  See Tex. R. Civ. P. 11;
Tex. Family Code Ann. § 6.603 (e),
(f).  Indeed, the parties emphasize that they
intentionally failed to incorporate into the “cooperative law agreement” those provisions
of the collaborative law statute that provided for notice to the trial
court.  Thus, the court was never put on
notice of the nature of the Agreement or the progress of the parties’
settlement negotiations until the parties sought binding arbitration under the
Agreement.

I would hold, therefore, that the Agreement is unenforceable
by virtue of the parties’ failure to file their “cooperative law agreement”
with the trial court as required by Rule 11 for the enforceability of all
agreements “touching any suit pending” while they were negotiating a settlement
for the dissolution of their marriage or, alternatively, by virtue of their intentional
failure to file status reports, as required for compliance with the
collaborative law statute.

(b) Failure
to provide for voluntary withdrawal from the Agreement and 

referral
to binding arbitration

 

Also, where the legislatively stated purpose of the
collaborative law statute is that the process is “entirely voluntary and
participation may be terminated at any time,” House Comm. on Civil Practices,
Bill Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001), the parties “cooperative
law agreement” provides that “if this case has not been settled by negotiation
and an Agreed Final Decree of Divorce has not been submitted to and signed by
the Court before April 30, 2009 then this matter will be submitted to binding
arbitration pursuant to the Joint Motion for Referral to Arbitration and Agreed
Order of Referral to Arbitration attached hereto and made a part hereof.”  The collaborative law statute, by contrast,
provides for returning the case to the regular docket setting for trial or
dismissal without prejudice if settlement is not reached in two years.  Tex.
Fam. Code Ann. § 6.603(g).

Thus, while the “cooperative law agreement” grounded itself
in Texas statutory authority permitting binding
alternative dispute resolution procedures, it pointedly skirted and violated
the safeguards in the collaborative law statute expressly designed to ensure
the voluntariness of parties’ participation in collaborative law negotiations
and further providing for return to the court’s docket or dismissal should the
collaborative law process fail, violating both the letter and the spirit of
section 6.603.

(c)  Failure
to provide for withdrawal of counsel on failure of the 

settlement negotiations

 

The parties likewise ignored the provisions of the
collaborative law statute that state, “The parties’ counsel may not serve as
litigation counsel except to ask the court to approve the settlement agreement,”
and that mandate “withdrawal of all counsel involved in the collaborative law
procedure if the . . . procedure does not result in settlement of the dispute.”
 Id. § 6.603(b),(c)(4).  Gary then took advantage of the Agreement’s
silence and proceeded to binding arbitration with the same counsel he had used
in the “cooperative law” negotiations, in plain contravention of sections
6.603(b) and (c),.

Thus, for this reason as well, I would hold that the parties’
Agreement violates Texas’s collaborative law statute and its public policy and
is void.

          7.       Violation of Texas Public Policy
Regarding the Dissolution of 

                   Marriage:  Section 1.101 of the Texas Family Code

The collaborative law procedures set out in detail in section
6.603 of the Family Code carry forward the express public policy of the State
of Texas regarding the dissolution of marriages stated in section 1.101 of the
Family Code—that policy being that, 

in order to provide stability for those
entering into the marriage relationship in good faith and to provide for an
orderly determination of parentage and security for the children of the
relationship, it is the policy of this state to preserve and uphold each
marriage against claims of invalidity unless a strong reason exists for holding
the marriage void or voidable

 

Id. § 1.101. 
Therefore, every marriage is presumed to be valid “unless expressly made
voidable by Chapter 6 and annulled as provided by that chapter.”  Id.
 The parties’ “cooperative law agreement”
directly contravenes the policy set out in section 1.101 and the plain language
of the statute by providing a private alternative to statutorily recognized
means for dissolving marriages under Texas law.

          The comparison between the “cooperative
law agreement” in this case and Texas’s collaborative law statute shows exactly
why the statutory safeguards of section 6.603 were meticulously put in place by
the Texas Legislature for parties wishing to engage in collaborative settlement
negotiations pertaining to the dissolution of a marriage.  Assuming that Gary did not make the “full and
candid exchange of information” that Mary Lynn contends he did not make, Mary
Lynn now finds herself bound to an agreement to settle through binding
arbitration, whereas under Texas’s collaborative law statute she could withdraw
from the collaborative law agreement at any time.  She is bound to this without having received
the notice of a “prominently displayed statement that is boldfaced,
capitalized, or underlined, that the agreement is not subject to revocation”
required for binding a party to a settlement agreement reached pursuant to
section 6.603(d)(1).  Id.
§ 6.603(d)(1).  She is denied the
protection of having the trial court put on notice of the “cooperative”
negotiations with their full disclosure and joint naming of experts.  And she is denied the protections of the
provisions in the collaborative law statute that the parties notify the court
in which the dissolution of marriage is pending if the collaborative law
procedures result in settlement or file a status report if they do not.  Id. § 6.603(f).  She is also denied the right to have the suit
set for trial by the trial court or dismissed without prejudice should the
collaborative law procedures not result in a settlement on or before the second
anniversary of the date the suit was filed. 
Id. § 6.603(g).

Finally, Mary is required to face Gary’s counsel in the
binding arbitration provided for by the cooperative law agreement to which she
is consigned, whereas, under the collaborative law statute and its statement of
purpose, collaborative law counsel are expressly required to withdraw if the
collaborative law procedure does not result in settlement of the dispute.  Id. § 6.603(c)(4).  Not only does the “cooperative law agreement”
violate the collaborative law statute in each of the ways set out above, but
also the overall picking and choosing among the provisions of the collaborative
law statute shows the clear intent of the drafters of the Agreement to avoid
the protections of law prescribed by section 6.603.

To count the parties’ cooperative law agreement as valid and
enforceable is thus to deny all meaning to section 1.101 of the Family Code,
setting out the express public policy of Texas with regard to marriage.  Indeed, to enforce such a private agreement is
to permit a party who has not negotiated in good faith and who has failed to
perform his obligations under the agreement, while benefitting from good faith
participation in informal discovery and negotiation by the opposing party, to
hold the party performing in good faith to binding arbitration while the
violator continues to use the same counsel but exposes to the other party only
that information he or she is required by arbitration procedures to share, flouting
the provisions of the collaborative law statute, depriving the opposing party
of its protections and of access to the courts, and potentially calling into
question the compliance of the attorney who continues representation of a party
in arbitration after the failure of the “cooperative law” proceedings with the
provisions of Rules 1.06 and 1.07 of the Texas Disciplinary Rules of
Professional Conduct, governing conflicts of interest.  See Tex. Disciplinary R. Prof’l Conduct 1.06, 1.07, reprinted in Tex. Gov’t. Code Ann., tit. 2, subtit.
G app. A (Vernon 2005). 

Because Texas expresses its public policy through its
statutes, and the Texas Legislature has expressly stated its policy regarding
the dissolution of marriage in section 1.101 of the Family Code; because it has
expressly permitted the dissolution of a marriage using collaborative law
procedures in section 6.603 of the Code, setting out mandatory provisions for
the protection of parties to such agreements; because the dissolution of
marriage through “cooperative law agreements,” such as the Agreement between
the parties in this case, is not expressly provided for in Chapter 6; and
because that Agreement systematically strips the protections of Chapter 6 from
the parties to it, I would hold that the Cooperative Law Dispute Agreement in
this case is injurious to the public good and that it is, therefore, void and
unenforceable as against public policy.

Disqualification
of Cooperative Law Counsel as Arbitration Counsel

Mary next argues that Keen, Gary’s collaborative law
attorney, must be disqualified from further participation in the dissolution of
marriage proceedings because Keen’s continued representation of Gary violates
the Texas collaborative law statute and Texas public policy.  I agree.

Courts are required to adhere to an exacting standard when
considering motions to disqualify counsel in order to discourage the use of
such motions as a dilatory trial tactic. 
Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656 (Tex.
1990); In re Seven-O Corp., 289 S.W.3d 384, 388 (Tex. App.—Waco 2009,
orig. proceeding).  The burden is on the
movant to establish with specificity a violation, in most cases a violation of
one or more disciplinary rules.  See
Spears, 797 S.W.2d at 656.  However,
the disciplinary rules are only guidelines, not controlling standards for
attorney disqualification.  In re Seven-O
Corp., 289 S.W. 3d at 388.  








Here, Keen was Gary’s “cooperative law” counsel and, in that
capacity, received all of the information from Mary that she would have
received had the parties proceeded properly under the applicable collaborative
law statute, section 6.603 of the Family Code. 
The Legislature’s analysis of the purpose of the statute expressly
contemplates that, in a collaborative law setting, “The parties agree to a full
exchange of records and to jointly hire experts.  If a settlement is not reached, the attorneys
must withdraw and the parties then employ trial counsel.”  House Comm. on Civil Practices, Bill
Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001).  The bill’s analysis further states that the “collaborative
law procedure (procedure) is a specified process, conducted under written
agreement of the parties and their counsel, to reach a settlement agreement
with minimal judicial intervention in a dissolution of marriage dispute or a
suit affecting the parent-child relationship” and that “[t]he bill sets forth
provisions for what the agreement must include.”  Id. 
The express language of section 6.603 mandates, inter alia, “full and candid exchange of information
between the parties and their attorneys [and] withdrawal of all counsel
involved in the collaborative law procedure if the . . . procedure does not
result in settlement of the dispute . . . .”  Tex.
Fam. Code Ann. § 6.603(c) (emphasis added).

By continuing as Gary’s counsel in binding arbitration
proceedings, rather than withdrawing, Gary’s counsel clearly contravenes the
stated policy of the State of Texas regarding attorneys who participate in
informal marriage dissolution negotiations. 
See id. § 6.603(b) (expressly
prohibiting counsel who has participated in collaborative law procedure from
“serv[ing] as litigation counsel except to ask the court to approve the
settlement agreement”), 6.603(c) (requiring collaborative law agreements to
include provision for “withdrawal of all counsel involved in the collaborative
law procedure if the collaborative law procedure does not result in settlement
of the dispute”).  

The reasons for this policy seem clear.  The collaborative law statute and the parties’
“cooperative law agreement” both expressly contemplate “the full and candid
exchange of information between the parties and their attorneys.”  If parties abide by these statutory and
contractual provisions, it is at least arguable that they will produce information
to the opposing party that ordinarily would be protected by the attorney client
privilege.  If that same counsel
continues to represent the same client in arbitration proceedings, he will then
have waived a privilege his client might otherwise be able to assert.  If he has not
made full and fair disclosure, he may well have violated the provisions of the
“cooperative law” agreement.  The
different roles of the attorney representing parties in settlement negotiations
based on “full and candid” disclosure of information and of the attorney
representing his client in court set up the potential for a conflict of
interest or waiver of the client’s privilege.  See Tex. Disciplinary R. Prof’l Conduct 1.06, 1.07.[4]

I recognize that it is not inevitable that representation of
a client in “cooperative law” or collaborative law proceedings followed by
representation of that same client in litigation, or, as here, in subsequent
binding arbitration, would lead to the conflicts of interest contemplated by
Rules 1.06 and 1.07 of the Rules of Disciplinary Conduct.  However, it is reasonable to infer that it is
precisely to avoid the potential for such conflicts of interest arising upon
the failure of settlement negotiations between opposing parties in the informal
full disclosure setting of collaborative law proceedings that Texas’s
collaborative law statute expressly mandates that counsel in the collaborative
law negotiations withdraw upon the failure of those negotiations.

I would hold that Keen is disqualified from representing Gary
in on-going dissolution of marriage proceedings under the express public policy
of the State of Texas.

Submission of Dispute to Arbitration under the Cooperative
Law Agreement

Mary also argues that the trial court clearly abused its
discretion by requiring her to proceed to arbitration under an alternative
dispute resolution agreement that fails to comply with Texas statutory law and
is against public policy.

A party attempting to compel arbitration must first establish
that the dispute in question falls within the scope of a valid arbitration
agreement.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex.
2003).  If the other party resists
arbitration, the court must determine whether a valid arbitration agreement
exists.  Id.  If the court finds that
the claim falls within the scope of a valid arbitration agreement, the court
has no discretion but to compel arbitration.  Forest
Oil Corp., 268 S.W.3d 51, 56 (Tex. 2008). 


While defenses attacking the validity of a contract as a
whole and not specifically aimed at the agreement to arbitrate are for the
arbitrator rather than the court, the presumption favoring arbitration arises
only after the party seeking to compel arbitration proves that a valid arbitration
agreement exists.  In re Morgan Stanley & Co., 293 S.W.3d 182, 185 (Tex. 2009)
(orig. proceeding).  “[W]here the ‘very
existence of a contract’ containing the relevant arbitration agreement is called
into question, the . . . courts have authority and responsibility to decide the
matter.”  In re Morgan Stanley, 293 S.W.3d at 187 (quoting Banc One Acceptance Corp. v. Hill, 367
F.3d 426, 429 (5th Cir. 2004)).  Any
claim that necessarily calls the existence of an agreement to arbitrate into
question is a question for the court.  Id. at 190.

In determining whether a valid agreement to arbitrate exists,
courts generally apply ordinary state-law principles that govern the formation
of contracts.  In re D. Wilson Const. Co, 196 S.W.3d 774, 781 (Tex. 2006); J.M. Davidson, 128 S.W.3d at 227–28; see also First Options of Chicago, Inc. v.
Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995).  Under Texas law, as with any contract,
agreements to arbitrate are valid unless grounds exist at law or in equity for
revocation of the agreement.  In re Poly-America, L.P., 262 S.W.3d
337, 348 (Tex. 2008).  “The burden of
proving such a ground—such as fraud, unconscionability or voidness under public
policy—falls on the party opposing the contract.”  Id.
A trial court’s determination regarding the validity of an arbitration
agreement is a legal question subject to de novo review.  Forest
Oil Corp., 268 S.W.3d at 55 & n.9; J.M.
Davidson, 128 S.W.3d at 227. 

Here, Chapter 6 of the Family Code provides that a court shall
“refer a suit for dissolution of marriage to arbitration” upon the “written
agreement of the parties.”  Tex. Fam. Code Ann. § 6.601 (Vernon
2006).  The provision presumes, however,
that the parties’ agreement is a valid agreement to arbitrate under Texas
law.  The arbitration provision in the
Agreement is clearly expressed to be the end result of the “cooperative law”
process in the event the parties do not reach a settlement, rather than a
separate agreement to arbitrate as provided for in Family Code section
6.601.  See id. § 6.601.

By providing for binding arbitration in advance of collaborative settlement negotiations should those
negotiations fail and by failing to permit voluntary withdrawal from the
“cooperative law agreement,” the Agreement directly contravenes intent of the
Legislature that such proceedings shall be voluntary and withdrawal shall be
permitted at any time.  The final House Bill Analysis’s statement of purpose
expressly states, “The collaborative law process offers parties the option to
negotiate in good faith for an out-of-court settlement.  The process is entirely voluntary and
participation may be terminated at any time.” 
House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1363, 77th
Leg., R.S. (2001).  

The arbitration clause also contravenes subsection 6.603(f)
of the collaborative law
statute, which requires that in the event collaborative law procedures do not
result in a settlement, “the parties shall file . . . a status report with the
court not later than the 180th day after the date of the written agreement to
use the procedures . . . .”  Tex. Fam. Code Ann. § 6.603(f)(1).  The clause
also contravenes subsection 6.603(g), which requires that if the collaborative
law procedures do not result in settlement by the second anniversary of the
date suit was filed, the court may set the suit for trial on the regular docket
or dismiss it.  Id. § 6.603(g).  

Finally,
the collaborative law statute provides that the parties’ counsel may not
participate in litigation except to seek court approval of any settlement
agreement and must withdraw if the proceedings fail.  Id. § 6.603(b),
(c)(4).  Necessarily, counsel who have
participated in informal collaborative settlement negotiations may not appear
in court and request an order sending the parties to binding arbitration, much
less binding arbitration in which the same counsel will continue to represent
the parties following failure of the settlement negotiations. 

The parties’ “cooperative
law agreement” intentionally avoids the provisions for court supervision of
settlement negotiations and denies recourse to the courts to a party to the Agreement
if the other party fails to participate in the negotiations in good faith, sending
them to binding arbitration instead.  In
addition, the arbitration provision is intended to apply even if, as here, one
of the parties continues to be represented by the same counsel who represented
that party in the settlement negotiations, contravening the letter and intent
of the public policy of Texas as stated in sections 1.101 and 6.603 of the Family
Code.

Thus, even if I had not
concluded that the entire Agreement was void, I would hold that the inclusion
of an arbitration provision in the parties “cooperative law agreement” violates
the letter and the spirit of sections 1.101 and 6.603 of the Family Code and that
the provision is void an unenforceable as against the public policy of the
State of Texas.[5]  See In
re Poly-America, 262 S.W.3d at 348 (holding that agreements to arbitrate
are valid unless grounds exist at law or in equity for revocation, including
“voidness under public policy”).

Conclusion

          For all the foregoing reasons, I
cannot agree with the majority’s conclusion that a private marriage dissolution
contract not authorized by Chapter 6 of the Family Code is valid and
enforceable, the necessary implication being that parties who do not wish to
follow Texas’s statutory provisions for dissolving a marriage do not have to do
so, a holding that contradicts both the plain language and the intent of
section 1.101 of the Family Code regarding the public policy of the State of
Texas with respect to marriage.  Nor do I
agree with the notion that parties may inextricably intertwine valid procedures
for voiding a marriage, such as arbitration clauses, into illegal marriage
dissolution contracts, validating the illegal provisions or avoiding their
taint.

          I would hold that the public policy of
the State of Texas as expressed in sections 1.101, 6.601, and 6.603 of the Family
Code clearly prohibits Texas state courts from recognizing as a valid method
for dissolving a marriage a private agreement that Chapter 6 of the Family Code
does not recognize as a means of making a marriage void, and that it prohibits
intertwining statutorily valid and invalid procedures regarding the dissolution
of marriage to avoid the protections of law. 


I would hold that both the parties’ Cooperative
Law Dispute Resolution Agreement and the arbitration provisions integral to it
are contrary to the public policy of the State and void.  I would further hold that the trial court
abused its discretion by enforcing the parties’ Cooperative Dispute Resolution
Agreement, by denying Mary’s motions to disqualify Keen as counsel in the
divorce proceedings, and by ordering Mary to arbitrate her claims as provided
in the Agreement.

 

 

 

 

 

 

I would provisionally grant
the petition for writ of mandamus.  I
would, therefore, remand the case to the trial court for further proceedings
consistent with this opinion and with sections 1.101 and 6.603 of the Family
Code.

 

 

 

Evelyn V. Keyes

Justice

 

Panel
consists of Justices Keyes, Hanks, and Higley.

Justice
Keyes, dissenting.











[1]
            The
following colloquy between the court and Gary’s counsel, Brenda Keen, occurred:

 

[The Court]:  So, the case is not filed as a Collaborative
Law Agreement under the statute?

 

[Ms. Keen]:   It is not, Your Honor.

 

[The Court]:  And there’s been no order signed by the Court
that approves collaborative law procedures and schedules and so forth.

 

[Ms. Keen]:   No notice of collaborative law proceedings
was filed, and the case had not been put on the collaborative track or no
notices of updates, nothing.  It is not a
collaborative case.

 

[The Court]:  And after the signing of the agreement that
includes the referral to arbitration, it wasn’t handled as a collaborative law
case subsequent to that time either?

 

[Ms. Keen]:   No.  It
was always, it was always handled under the agreement, which is attached to my
motion, to try to resolve it out of court by negotiation, and if we were unable
to settle it by a date certain, we would go to submit all issues to binding
arbitration.

 





[2]         Tex.
Fam. Code Ann. § 6.603(f) (Vernon 2006).





[3]             Mary also argues that, even if the
Agreement was formerly enforceable, she terminated it after Gary breached it
and it is no longer enforceable.





[4]
                            Rule 1.06 is the general rule on attorney conflicts of
interest.  It provides that, within
limitations, a lawyer shall not represent “opposing parties to the same
litigation” or any person if representation of that
person “involves a substantially related matter in which that person’s
interests are materially and directly adverse to the interest of another
client” or “reasonably appears to be or become adversely limited by the
lawyer’s . . . responsibilities to another client or to a third
person. . . .”  Tex. Disciplinary R. Prof’l Conduct
1.06(a), (b), reprinted in Tex.
Gov’t. Code Ann., tit. 2, subtit. G app. A (Vernon 2005).  

                        Rule 1.07 addresses
conflicts of interest when an attorney acts as an intermediary.  Tex. Disciplinary
R. Prof’l Conduct 1.07(a).





[5]           Because
I would hold that the arbitration agreement is void, I would also hold that Mary=s fourth issue, contending that even if formerly
enforceable, the arbitration agreement is no longer enforceable, is moot.